ORIGINAL
FEB 1 4 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHEP USA, a New York Partnership, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:02-CV-2053 ᏴᏴM |
| v. | ) | |
| | ) | |
| MOCK PALLET COMPANY, | ) | |
| a Georgia Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF CHEP USA'S MOTION FOR PROTECTIVE ORDER

Plaintiff CHEP USA ("CHEP") files its Motion for Protective Order, pursuant to Fed. R. Civ. P. 26(c), showing the Court as follows:

1.

CHEP seeks entry of its proposed Protective Order (a copy of which is attached to CHEP's Memorandum of Law in Support of Motion for Protective Order as Exhibit A). The parties have met and conferred in good faith, as required by Fed. R. Civ. P. 26(c), and have been unable to reach an agreement concerning an appropriate protective order. While the parties agree that a protective order is necessary to govern the production and use of documents produced in this litigation, the parties have been unable to agree on the scope of disclosure. Mock



seeks to limit disclosure to outside counsel only, while CHEP seeks access to

confidential information to outside and a single inside counsel. Since Mock seeks

to further limit the disclosure of information, it must prove that the restrictions are

warranted. See Fed. R. Civ. P. 26 (c) (7); In re Wilson, 149 F.3d 249, 252 (4th Cir.

1998).

2.

Federal courts routinely allow in-house counsel access to confidential

business information where in-house counsel are not involved in decisions of the

company as they relate to the information to be produced in the litigation. See

United States Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984);

Volvo Penta of the Americans, Inc. v. Brunswick Corp., 187 F.R.D. 240, 242 (E.D.

Va. 1999); Glaxco Inc. v. GenPharm Pharmaceuticals, Inc., 796 F. Supp. 872, 874

(E.D. N.C. 1992); Carpenter Technology Corp. v. Armco, Inc., 132 F.R.D. 24, 27

(E.D. Pa. 1990). Typically, courts balance numerous factors, including "(1) the

nature of the litigation and whether that litigation presents difficult or complex

issues or claims; (2) whether alternative discovery measures would assist the in-

house attorney seeking access to the confidential information in the development

of the litigation; and (3) whether that in-house attorney is involved in the

employer-litigant's 'competitive decisionmaking.'" <u>Volvo Penta</u>, 187 F.R.D. at 242.

3.

Applying the balancing test employed by other courts and as demonstrated by the affidavit of Mr. Sean J. Murphy, in-house counsel for CHEP (a copy of which is attached to CHEP's Memorandum of Law as Exhibit C), this Court should enter the Protective Order proposed by CHEP because (1) Mr. Murphy's role does not involve competitive decision-making that will be affected by the confidential information Mock will produce; (2) Mr. Murphy's ability to assist and direct outside counsel and make strategic decisions regarding this complex litigation will be severely hindered without access to confidential information; and (3) no alternative discovery measure exists to provide Mr. Murphy access to this information.

4.

WHEREFORE, plaintiff CHEP respectfully requests that this Court enter its Proposed Order.

Respectfully submitted this 14th day of February, 2003.

KING & SPALDING LLP

Chilton Davis Varner
Georgia Bar No. 725450
W. Randall Bassett
Georgia Bar No. 041525

191 Peachtree Street
Atlanta, Georgia 30303-1763
(404) 572-4600

Counsel for Plaintiff CHEP USA

## CERTIFICATION OF COMPLIANCE WITH
## FED. R. CIV. P. 26(c) and L.R. 5.1B

I hereby certify that the counsel for CHEP has conferred with counsel for Mock in a good faith to resolve this dispute without court action.

I further certify that the foregoing MOTION FOR PROTECTIVE ORDER has been computer processed with 14 point New Times Roman font in compliance with N.D.G.A. Local Rule 5.1B.

This __14th__ day of February, 2003.

W. Randall Bassett
Georgia Bar No. 041525
Attorney for the Purdue Defendants

KING & SPALDING LLP
191 Peachtree Street, N.E.
Atlanta, Georgia 30303-1763
(404) 572-4600
(404) 572-5144

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

CHEP USA, a New York Partnership,   )
                                     )

                Plaintiff,        )

                                     )

     v.                            )   Case No. 02-CV-2053-BBM

                                     )

MOCK PALLET COMPANY,         )
a Georgia Corporation,            )

                                     )

              Defendant.    )

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF CHEP USA'S MOTION FOR PROTECTIVE ORDER** was served upon counsel for defendant by depositing same in the United States mail, with sufficient postage thereon to insure delivery, and addressed as follows:

> Eugene D. Butt, Esq.
> Ballard, Stephenson & Waters, LLP
> P.O. Box 29
> Covington, GA 30015.

This __14th__ day of February, 2003.

W. Randall Bassett
Georgia Bar No. 041525

ORIGINAL
FEB 1 4 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York Partnership, )
)
Plaintiff, )
)    CASE NO. 1:02-CV-2053
v. )
)
MOCK PALLET COMPANY, )
a Georgia Corporation, )
)
Defendant. )

## PLAINTIFF CHEP USA'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Plaintiff CHEP USA files its Memorandum of Law in Support of Motion for

Protective Order, respectfully showing the Court as follows:

### **INTRODUCTION**

Prior to filing its Motion, counsel for CHEP conferred with Mock's counsel

on several occasions, and the parties were successful in agreeing to most of the

terms of a proposed protective order. For example, the parties agree that a

protective order is necessary to govern the production and use of documents

produced in this litigation and to limit the dissemination of confidential business

information.

Both sides also have agreed on all but a single term of a proposed protective

order. Mock seeks to limit disclosure of highly sensitive and confidential

information to outside counsel only, while CHEP asks that outside and inside counsel have access to this information. (Compare CHEP's proposed Protective Order, ¶ 1 to Mock's proposed Protective Order, ¶ 1, attached as Exhibits "A" and "B"). For Mock, highly sensitive and confidential information includes the names of customers from whom it has obtained CHEP pallets and customers to whom it has provided CHEP pallets, as well as documents describing transactions with its customers involving CHEP pallets.

Specifically, CHEP's proposed order allows its in-house counsel, Mr. Sean J. Murphy, Senior Vice President and General Counsel of CHEP International, Inc., access to confidential information. Mr. Murphy is responsible for all of CHEP's litigation. At issue is whether CHEP's in-house counsel should be allowed to direct and assist outside counsel in handling this complex litigation. In analyzing this issue, courts typically apply a balancing test considering the nature of the litigation, alternative discovery measures, and assessing the in-house counsel's involvement in competitive decision making. See Volvo Penta of the Americas, Inc. v. Brunswick Corp., 187 F.R.D. 240, 242 (E.D. Va. 1999); Carpenter Technology Corp. v. Armco, Inc., 132 F.R.D. 24, 27 (E.D. Pa. 1990). Since Mock seeks to further limit the disclosure of information, it must prove that this additional restriction is warranted. See Fed. R. Civ. P. 26 (c) (7); In re Wilson, 149 F.3d 249, 252 (4th Cir. 1998). While Mock has not offered any proof for this

added restriction, CHEP establishes below why neither the information to be disclosed nor Mr. Murphy's role at CHEP prohibits the disclosure of confidential information to him. In support of its Motion, CHEP has attached the affidavit of Mr. Murphy as Exhibit "C" to this Memorandum of Law.

## ARGUMENT AND CITATION OF AUTHORITIES

### A.   Courts Regularly Provide In-House Counsel Access to Confidential Information Based on a Balancing of Factors

CHEP recognizes the legitimacy of Mock's concern about limiting the dissemination of confidential information to employees of CHEP, including in-house counsel. See, e.g., Akzo NV v. United States International Trade Commission, 808 F.2d 1471, 1483 (Fed. Cir. 1986), cert denied, 482 U.S. 909 (1987) ("obviously where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased"). However, the fact that a lawyer also is an employee of the party involved in litigation does not prohibit him from accessing confidential information. See United States Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("Like retained counsel, however, in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions."); In Re Papst Licensing Patent Ligitaion, Case No. 99-3118, 2000 U.S. Dist. LEXIS 5747 (E.D. La. April 26, 2000) (attached as

3

Exhibit "D"); Glaxco Inc. v. GenPharm Pharmaceuticals, Inc., 796 F. Supp. 872, 874 (E.D. N.C. 1992).

Rather, "the court must balance the risk of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims." Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1991), cert. denied, 506 U.S. 869 (1992). Accordingly, the courts have adopted a test balancing such factors, as "(1) the nature of the litigation and whether that litigation presents difficult or complex issues or claims; (2) whether alternative discovery measures would assist the in-house attorney seeking access to the confidential information in the development of the litigation; and (3) whether that in-house attorney is involved in the employer-litigant's 'competitive decisionmaking.'" Volvo Penta, 187 F.R.D. at 242. See also Brown Bag Software, 960 F.2d at 1470; Amgen, Inc. v. Elanex Pharm., Inc., 160 F.R.D. 134, 138 (W.D. Wash. 1994).

While all of these factors are considered, the third of these – competitive decision-making -- is often considered the "crucial" factor. See Volvo Penta, 187 F.R.D. at 242; Glaxco Inc., 796 F. Supp. at 874. Competitive decision-making, moreover, has been defined as "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of client's decisions (pricing, product design, etc.) made in light of similar or

4

corresponding information about a competitor." U. S. Steel Corp., 730 F.2d at 1468 n. 3, quoted in Carpenter Technology Corp. v. Armco, Inc., 132 F.R.D. 24, 27 (E.D. Pa. 1990).

Carpenter involved the alleged breach of a settlement agreement reached in a patent validity action. The litigation necessarily involved the disclosure of confidential information, and the parties negotiated a protective order to govern the dissemination and use of this information. They were able to reach agreement on the terms of the order, except they could not agree on whether in-house counsel should have access to the information. Carpenter moved the court for an order allowing its in-house counsel access to the information. The court, analyzing affidavits submitted by two in-house counsel, allowed access to one counsel and denied access to the other. 132 F.R.D. at 26.

Applying the "competitive decision-making" factor to each affidavit, the court noted that one in-house counsel had no involvement in decisions regarding pricing of products or services, did not participate in marketing decisions, and was not involved in product design or production. Id. at 27-28. This lawyer (Pretz) was granted access to confidential information. Id. Analyzing the second in-house counsel's affidavit, the court found that he failed to explain his role in competitive decision making. Specifically, this lawyer affirmed that he had no direct responsibility or authority over competitive decisions. Id. at 28.

Analyzing the second lawyer's affidavit (Welty), the court denied him access to confidential information, noting that it had already granted access to one in-house counsel, that Welty's affidavit did not adequately explain his role in competitive decision making, and that Carpenter failed to explain why two in-house counsel needed access to confidential information. Id. ("My decision denying Welty access to confidential information is, in part, guided by the fact that Pretz will have access to such information and will be able to advise outside counsel concerning technical matters and guide outside counsel throughout the course of this litigation.").

In this case, Mr. Murphy is the only in-house counsel at CHEP, his activities do not rise to the level warranting restricted access to confidential information, and his access to confidential information is necessary to assist and direct outside counsel and to make informed decisions about this complex litigation.

## B. The Balancing Test Supports Entry of the Protective Order That Provides Mr. Murphy Access to Confidential Information

Applying the balancing test employed by other courts, this Court should enter the Protective Order proposed by CHEP because (1) Mr. Murphy's role does not involve competitive decision-making that will be affected by confidential information Mock will produce; (2) Mr. Murphy's ability to assist and direct outside counsel in this complex litigation will be severely hindered without access to confidential information; and (3) no alternative discovery measure exists to

6

provide Mr. Murphy access to this information. Moreover, Mock has provided no basis for denying Mr. Murphy access to this information, other than an unfounded concern that its "trade secrets will be divulged and that Mock Pallet Co. will be squashed. . . ." (See Letter from Butt to Bassett, Jan. 28, 2003, attached as Exhibit "E"). As explained by his affidavit, Mr. Murphy's access to Mock's business information will not lead to its dissemination at CHEP but will aid outside counsel in its representation of CHEP in this litigation and assist Mr. Murphy in making informed decisions about this complex litigation.

Mr. Murphy is Senior Vice President and General Counsel of CHEP International, Inc. (Murphy Aff. ¶ 1). He is a member of the Massachusetts Bar. (Id.). As Senior Vice President and General Counsel of CHEP International, Inc., Mr. Murphy provides legal services to CHEP USA (and other CHEP entities around the world), and he is the only in-house counsel providing legal counsel to CHEP USA. (Id.). Mr. Murphy oversees all litigation involving CHEP USA, including this lawsuit. (Id.). Mr. Murphy does provide advice on business decisions, but this advice is limited to those that either affect the company as a whole or those that directly involve litigation, the potential for litigation, or other legal issues. (Id. ¶ 4). Specifically, Mr. Murphy is not involved in competitive decisions relating to specific customers or potential customers. (Id.). He is not

7

involved in individual decisions about the pricing of CHEP's services, including what it charges for the rental of CHEP pallets. (Id.).

As Mr. Murphy's affidavit explains, his review of Mock's confidential information will not harm Mock because he has no competitive decision-making responsibility over individual customers or prospective customers. (Id. ¶ 3-4). Likewise, his responsibilities do not involve decisions regarding pricing to individual customers. (Id.).

The information that Mock claims to be confidential, moreover, relates to individual customers and nothing more: the names of customers and documents describing transactions with its customers. Accordingly, similar to the Carpenter court's analysis of the Pretz affidavit, Mr. Murphy simply is not involved in competitive decision-making that could be affected by reviewing Mock's confidential information. Carpenter, 132 F.R.D. at 28. See also Volvo Penta, 187 F.R.D. at 243 (granting inside-counsel access to confidential information after finding that counsel lacked competitive decision-making role); Glaxco Inc., 796 F. Supp. at 874 (allowing access where inside-counsel's involvement in competitive decision-making did not outweigh need for information).

CHEP, moreover, could be prejudiced in this complex litigation, if Mr. Murphy is denied access to confidential information because Mr. Murphy, who actively manages this lawsuit, will be hindered in his ability to assist and direct

outside counsel. As explained in its concurrently filed Motion to Compel, this case presents complex issues involving Article 2A of the Uniform Commercial Code, O.C.G.A. § 11-2A-305, including whether CHEP's rental agreements represent "true" leases and the effect on those leases of alleged third party purchasers. (See CHEP USA's Memorandum of Law in Support of Motion To Compel, pp. 14-16). Mr. Murphy has expertise about the legal issues presented by this lawsuit and their application to CHEP's business practices, and he is responsible for all litigation involving CHEP USA. (Murphy Aff. ¶ 1). Utilizing his expertise, Mr. Murphy actively assists and directs outside counsel in litigation, reviewing pleadings and discovery, participating in witness interviews, preparing discovery responses, and collecting responsive documents for production. (Id. ¶ 6).

Without access to confidential information, Mr. Murphy's ability to assist and direct outside counsel will be curtailed severely. For example, an analysis of Mock documents may suggest a need for third-party discovery. Mr. Murphy's ability to strategize with outside counsel on this issue is dependent on access to Mock's customer information to know against whom such discovery is contemplated. Likewise, motions in this case likely will include a discussion of Mock's transactions with its customers. Without access to confidential information, Mr. Murphy will be unable to review motions to offer advice and direction to outside counsel. Mr. Murphy's need for access to confidential

information outweighs the risk of inadvertent disclosure and should be allowed. See In Re Papst, 2000 U.S. Dist. LEXIS 5747 (allowing access where risk of inadvertent disclosure did not outweigh impairment if access denied) (Exhibit "E"); Glaxco Inc., 796 F. Supp. at 874 (allowing access where inside-counsel's involvement in competitive decision-making did not outweigh need for information).

Nor is there any alternative to providing Mr. Murphy access to this information. He is the only attorney at CHEP providing legal advice. (Murphy Aff. ¶ 1). He will be the only person at CHEP with access to this information. Likewise, given the type of information involved, CHEP knows of no alternative way to provide this information to Mr. Murphy, so he can meaningfully assist outside counsel. The lack of alternatives favors entering CHEP's proposed Protective Order and granting Mr. Murphy access to confidential documents. See Carpenter, 132 F.R.D. at 28 (relying on access to one in-house attorney as basis for denying access to second in-house attorney).

## CONCLUSION

Because it seeks an order further restricting the dissemination of confidential information, Mock bears the burden of establishing its need to restrict confidential information to outside counsel. Fed. R. Civ. P. 26(c)(7); In re Wilson, 149 F.3d 249, 252 (4th Cir. 1998). By contrast, CHEP need not prove anything.

Nevertheless, it has done so. Applying the factors used by other courts in analyzing whether in-house counsel should have access to confidential information, CHEP has shown that Mr. Murphy, its sole in-house counsel, should be given access to confidential information because (1) Mr. Murphy's role does not involve competitive decision-making that will be affected by the information Mock will produce; (2) Mr. Murphy cannot effectively assist and direct outside counsel and make strategic decisions about this complex litigation without access to this information; and (3) no alternative exists to providing Mr. Murphy access to this information. For these reasons, CHEP respectfully requests that its proposed Protective Order be entered and Mr. Murphy be granted access to all confidential information produced in this case.

Respectfully submitted this 14th day of February, 2003.

KING & SPALDING LLP

Chilton Davis Varner
Georgia Bar No. 725450
W. Randall Bassett
Georgia Bar No. 041525

191 Peachtree Street
Atlanta, Georgia 30303-1763
(404) 572-4600

Counsel for Plaintiff CHEP USA





EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CHEP USA, a New York Partnership, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 02-CV-2053-BBM |
| v. | ) ) | |
| MOCK PALLET COMPANY, a Georgia Corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **PROTECTIVE ORDER**

For good cause shown, IT IS HEREBY ORDERED that the following Protective Order be entered in this action.

1.      Scope of Protective Order.

This Stipulated Protective Order applies to all "Discovery Material" produced or obtained in this action, including all "Confidential Material" and material designated "Attorney's Eyes Only."

2.      Definitions.

(a)      "Discovery Material" consists of all documents, testimony, discovery responses, depositions, transcripts, interrogatory responses, and other information or materials produced or given by any named party (a "Party") or non-party during discovery in this civil action. For purposes of this Protective Order,

Discovery Material produced by a present or former officer, director, employee, or agent of a party or non-party shall be deemed to have been produced by that party or non-party. The person or entity who produces Discovery Material is the "Producing Party." Each Party who receives Discovery is a "Receiving Party."

(b)     "Confidential Material" consists of any non-public Discovery Material which contains trade secrets or sensitive commercial, financial, or business information, the public disclosure of which is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

(c)     "Attorney's Eyes Only Material" consists of non-public Discovery Material which contains trade secrets or highly sensitive commercial, financial, or business information, the disclosure of which to employees of the Receiving Party is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

3.     Designation of Information.

(a)     The Producing Party shall identify Confidential Material or Attorney's Eyes Only Material by placing on each page of Discovery Material (in such manner as will not interfere with the legibility thereof) a stamp or label indicating that the material is "Confidential" or (other than with respect to documents produced) by providing through other reasonable means written notice of the Producing Party's intent to claim protected status for the Discovery Material.

The Producing Party shall identify Confidential Material or Attorney's Eyes Only Material at the time of its production or as set forth in Paragraph 3(b) below. Designation of Discovery Material as Confidential Material or Attorney's Eyes Only Material constitutes a certification by the party and its counsel that the Discovery Materials so designated fall within the definitions set forth in Paragraphs 2(b) above.

(b)     The Producing Party may remedy an inadvertent failure to identify Confidential Material or Attorney's Eyes Only Material by supplemental written notice within a reasonable time after production. Upon receipt of such supplemental written notice, counsel for the Receiving Party shall undertake to recover from their client all copies and abstracts of the Discovery Material that is the subject of the supplemental written notice and shall instruct all persons who viewed the material as to the appropriate treatment thereof.

4.     Disclosure, Use and Handling of Discovery Material.

(a)     The Receiving Party shall use Confidential Material and Attorney's Eyes Only Material solely for the purposes of this civil action (including depositions and appeals, and specifically excluding business or governmental purpose). Neither the parties nor their counsel shall use or disclose Confidential Material or Attorney's Eyes Only Material beyond the use or disclosure permitted hereunder. The prohibitions on use and disclosure, other than

may be specifically permitted by this Protective Order, shall survive any dismissal of or final adjudication of claims raised in this civil action.

(b)     This Protective Order applies to Confidential Material and Attorney's Eyes Only Material used during depositions in this action, provided that counsel for the Producing Party designates the relevant portions of the deposition transcript as Confidential or Attorney's Eyes Only.  Such designation shall be either (i) an oral statement made during the deposition which indicates the beginning and end of the testimony so designated, which shall be indicated on the transcript of such a deposition, or (b) a written notice sent to all counsel of record which specifically indicates the pages so designated.  This written notice shall be given within the earlier of: twenty-one (21) days after the date on which the deposition is delivered to counsel for the Producing Party or three (3) days from the dispositive motion cut-off date.  All designated testimony and all Confidential Material or Attorney's Eyes Only Material attached as an exhibit to a deposition in this action shall be sealed and protected from disclosure by this Protective Order.

(c)     The Receiving Party shall not disclose, describe, or otherwise directly or indirectly use or make available Confidential Material to any person other than:

(i)     the Court in which this civil action is pending and its employees;

(ii)    the Parties, including officers, directors, attorneys and employees of any Party who have a need to know of such confidential information for purposes of the litigation;

(iii)   counsel of record for the Parties, and attorneys, paralegals, clerical employees or other staff of such counsel;

(iv)   a witness, to be called at trial or hearing provided that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using its own Confidential Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Confidential Material in questioning any employee or former employee of a Producing party);

(v)    a deponent, provided, that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and, three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using its own Confidential Material

in any way nor shall this provision limit a Receiving Party from using a Producing Party's Confidential Material in questioning any employee or former employee of a Producing Party);

(vi) counsel for a witness or deponent that has executed a Non-Disclosure Agreement in the form attached as Exhibit A;

(vii) a non-party individual retained by a Party for the purpose of giving advice or furnishing expert witness services in this action, provided that individual has executed a Non-Disclosure Agreement in the form attached as Exhibit A; and

(viii) court reporters.

(d) The Receiving Party shall not disclose, describe, or otherwise directly or indirectly use or make available Attorney's Eyes Only Material to any person other than:

(i) the Court in which this civil action is pending and its employees;

(ii) Counsel for the Parties, and attorneys. paralegals, clerical employees or other staff of such counsel;

(iii) a non-party individual retained by a Party for the purpose of giving advice or furnishing expert witness services in this action, provided that individual has executed a Non-Disclosure Agreement in the form attached as Exhibit "A";

(iv) court reporters;

(v) authors and/or recipients of any document bearing an Attorney's Eyes Only legend;

(vi)    a witness, to be called at trial or hearing provided that (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A", and (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using its own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to the Attorney's Eyes Only Material in the course of their employment with the Producing Party);

(vii)    a deponent provided that (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party first obtains the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using its own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to the

Attorney's Eyes Only Material in the course of their employment with the Producing Party); and

(viii)  counsel for a witness or deponent that has executed a Non-Disclosure Agreement in the form attached as Exhibit "A".

5.  Challenge to Designations.

The Receiving Party shall have the right to object to the designation of Discovery Material as Confidential Material or Attorney's Eyes Only Material and may apply to the Court for a ruling that such material shall not be so treated, or for a ruling that persons beyond the scope of the persons described in Paragraph 4 above may review the Discovery Material by giving written notice to Producing Party. The Producing Party shall have the burden of establishing the propriety of the protected status of the Discovery Material. The Court, in its discretion, may award expenses and attorney's fees as sanctions against any party or non-party whom the Court determines has in bad faith claimed protected status for Discovery Material. Until the Court enters an order changing the designation for a particular document, the document shall be given treatment in accordance with the designation given by the Producing Party.

Nothing herein shall operate as an admission by any Party that any particular Discovery Material contains "Confidential Material" or "Attorney's Eyes Only Material" for purposes of determining the merits of the claim in this

litigation. A party shall not be obligated to challenge the propriety of the designation of any Discovery Material at the time such designation is made; failure to do so shall not preclude a subsequent challenge. Further, a Party's failure to challenge a designation during pretrial discovery shall not preclude a subsequent challenge of such designation at trial or in connection with motion practice concerning the merits of the claims of this litigation.

6.    Filing Documents with the Court.

Any Party who files with the Court a pleading or other paper that contains or has attached thereto Confidential Material or Attorney's Eyes Only Material shall seal that pleading or other paper in an envelope bearing the caption of the action and following legend:

## CONFIDENTIAL

**This envelope contains documents or transcripts that are subject to a Protective Order. This envelope shall not be opened nor the contents thereof displayed or revealed except by and to the Court and its staff, or otherwise by Order of Court. Violation thereof may be regarded as contempt of court.**

A filed paper containing Confidential Material or Attorney's Eyes Only Material shall be kept under seal until further Order of the Court.

7. **Conclusion of Litigation.**

(a) The provisions of this Protective Order regarding the use and disclosure of Confidential Materials or Attorney's Eyes Only Material shall survive the conclusion of this action.

(b) Promptly upon the conclusion of this action, all Confidential Materials shall be (at the Receiving Party's option) either destroyed or returned to the Producing Party. Counsel of record shall certify compliance herewith and serve such certification on opposing counsel not more than 150 days after a final termination of the action (including any appeals). Parties and counsel may retain copies of papers filed with the Clerk of Courts in this action which contain Confidential Material, provided such papers are maintained in accordance with the restrictions contained in this Protective Order. Parties and counsel may retain notes and correspondence which contain Confidential Material, provided such notes and correspondence are kept under seal.

(c) Promptly upon the conclusion of this action, all Attorney's Eyes Only Materials shall be returned to the Producing Party. Counsel may retain copies of papers filed with the Clerk of Courts in this action which contain Attorney's Eyes Only Material, provided such papers are maintained in accordance with the restrictions contained in this Protective Order. Counsel may retain notes and correspondence and any work product materials which contain Attorney's

Eyes Only Material, provided such notes, correspondence, and work product materials are maintained in accordance with the restrictions contained in this Protective Order, and are kept under seal.

8.   <u>No Waiver</u>.

(a)   This Protective Order does not preclude, upon an appropriate showing, either (i) the Producing Party from seeking and obtaining additional protection for specific material, or (ii) any Party from seeking and obtaining relief from some or all of the restrictions contained in this Protective Order.

(b)   This Protective Order does not limit the Producing Party's use of its own Discovery Materials.

SO ORDERED:

_____
Judge Beverly B. Martin

# EXHIBIT "A"

## NON-DISCLOSURE AGREEMENT

I, _____, hereby certify my understanding that Discovery Materials that contain Confidential Material and/or Attorney's Eyes Only Material are being provided to me pursuant to the terms and restrictions of a Protective Order in <u>CHEP USA v. Mock Pallet Company</u>, United States District Court Northern District of Georgia, Case No. 02-CV-2053-BBM.

I further certify that I have been provided a copy of and have read the Protective Order, and I agree to comply with and be bound by its terms and conditions. I also consent to the jurisdiction of the Court for the purposes of enforcing the Protective Order. I understand that violation of the Protective Order is punishable by contempt of Court.

Date: _____    Signature: _____

Sworn to before me and subscribed in my presence this __ day of

_____, 200__.

_____
Notary Public

My Commission expires: _____



# EXHIBIT / ATTACHMENT

_B_

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHEP USA, a New York Partnership, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02-CV-2053-BBM |
| | ) | |
| vs. | ) | |
| | ) | |
| MOCK PALLET COMPANY, | ) | |
| A Georgia Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## STIPULATION AND PROTECTIVE ORDER

It is hereby stipulated and agreed by and between the parties to this action, through their respective counsel that the following Protective Order be entered in this action. Until same is approved and made an Order of this Court, the parties agree to be bound by the terms hereof.

1. Scope of Protective Order.

This Stipulated Protective Order applies to all "Discovery Material" produced or obtained in this action, including all "Confidential Material" and material designated "Outside Attorney's Eyes Only."

2. Definitions.

(a) "Discovery Material" consists of all documents, testimony, discovery responses, depositions, transcripts, interrogatory responses, and other information or materials produced or given by any named party (a "Party") or non-party during discovery in this civil action. For purposes of this Stipulation and Protective Order, Discovery Material produced by a present or former officer, director, employee, or agent of a party or non-party shall be deemed to have been produced by that party or non party. The person or entity who produces Discovery Material is the "Producing Party." Each Party who receives Discovery is a "Receiving Party."

1

(b) "Confidential Material" consists of any non-public Discovery Material which contains trade secrets or sensitive commercial, financial, or business information, the public disclosure of which is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

(c) "Outside Attorney's Eyes Only" material consists of non-public Discovery Material which contains trade secrets or highly sensitive commercial, financial, or business information, the disclosure of which to employees of the Receiving Party is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

3.    Designation of Information.

(a) The Producing Party shall identify Confidential Material or Outside Attorney's Eyes Only Material by placing on each page of Discovery Material (in such manner as will not interfere with the legibility thereof) a stamp or label indicating that the material is "Confidential" or "Outside Attorney's Eyes Only" or (other than with respect to documents produced) by providing through other reasonable means written notice of the Producing Parties' intent to claim protected status for the Discovery Material. The Producing Party shall identify Confidential Material or Outside Attorney's Eyes Only Material at the time of its production or as set forth in Paragraph 3(b) below. Designation of Discovery Material as Confidential Material or Outside Attorney's Eyes Only Material constitutes a certification by the party and its counsel that the Discovery Materials so designated fall within the definitions set forth in Paragraphs 2(b) and (c) above.

(b) The Producing Party may remedy an inadvertent failure to identify Confidential Material or Outside Attorney's Eyes Only Material by supplemental written notice within a reasonable time after production. Upon receipt of such supplemental written notice,

2

counsel for the Receiving Party shall undertake to recover from their client all copies and abstracts of the Discovery Material that is the subject of the supplemental written notice and shall instruct all persons who viewed the material as to the appropriate treatment thereof.

4. Disclosure, Use and Handling of Discovery Material.

(a) The Receiving Parties shall use Confidential Material and Outside Attorney's Eyes Only Material solely for the purposes of this civil action (including depositions and appeals, and specifically excluding business or governmental purpose). Neither the parties nor their counsel shall use or disclose Confidential Material or Outside Attorney's Eyes Only Material beyond the use or disclosure permitted hereunder. The prohibitions on use and disclosure, other than may be specifically permitted by this Stipulation and Protective Order, shall survive any dismissal of or final adjudication of claims raised in this civil action.

(b) This Stipulation and Protective Order applies to Confidential Material and Outside Attorney's Eyes Only Material used during depositions in this action, provided that counsel for the Producing Party designates the relevant portions of the deposition transcript as Confidential or Outside Attorney's Eyes Only. Such designation shall be either (i) an oral statement made during the deposition which indicates the beginning and end of the testimony so designated, which shall be indicated on the transcript of such a deposition, or (ii) a written, notice sent to all counsel of record which specifically indicates the pages so designated. This written notice shall be given within the earlier of: twenty-one (21) days after the date on which the deposition is delivered to counsel for the Producing Party or three (3) days from the dispositive motion cut-off. All designated testimony and all Confidential Material and/or Outside Attorney's Eyes Only Material attached as an exhibit to a deposition in this action shall be sealed and protected from disclosure by this Stipulation and Protective Order.

3

(a) The Receiving Parties shall not disclose, describe or otherwise directly or indirectly use or make available Confidential Material to any person other than:

(i) the Court in which this civil action is pending and its employees;

(ii) the Parties, including officers, agents, directors, attorneys and employees of any other Party who have a need to know of such confidential information for purposes of the litigation;

(iii) counsel of record for the Parties, and attorneys, paralegals, clerical employees or other staff of such counsel;

(iv) a witness, to be called at trial or hearing provided that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Confidential Material in any way nor shall this provision limit a Receiving Party

4



from using a Producing Party's Confidential Material in questioning any employee or former employee of a Producing Party);

(v) a deponent provided that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and, three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Confidential Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Confidential Material in questioning any employee or former employee of a Producing Party).

(vi) counsel for a witness or deponent that has executed a Non-Disclosure Agreement in the form attached as Exhibit "A";

(vii) a non-party individual retained by a Party for the purpose of giving advice or furnishing expert witness services in this action, provided that individual has executed a Non-Disclosure Agreement in the form attached as Exhibit "A"; and

    (viii) court reporters.

  (b) The Receiving Parties shall not disclose, describe, or otherwise directly or indirectly make available Outside Attorney's Eyes Only Material to any person other than:

    (i)  The Court in which this civil action is pending and its employees;

    (ii)  outside counsel of record for the Parties, and attorneys, paralegals, clerical employees or other staff of such counsel;

    (iii)  a non-party individual retained by a Party for the purpose of giving advice or furnishing expert witness services in this action, provided that individual has executed a Non-Disclosure Agreement in the form attached as Exhibit "A";

    (iv)  court reporters;

    (v)  authors and/or recipients of any document bearing an Attorney's Eyes Only legend;

    (vi)  a witness to be called at trial or hearing provided that (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek

6

protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to the Attorney's Eyes Only Material in the course of their employment with the Producing Party); and

(vii)    a deponent, provided that (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party first obtains the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party provides the name, address and employer name of the witness to counsel for the Producing Party. During this three day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to

7



the Attorney's Eyes Only Material in the course of their employment with the Producing Party).

5.    Challenge to Designations.

The Receiving Party shall have the right to object to the designation of Discovery Material as Confidential Material or Outside Attorney's Eyes Only Material and may apply to the Court for a ruling that such material shall not be so treated, or for a ruling that persons beyond the scope of the persons described in Paragraph 4 above may review the Discovery Material by giving written notice to Producing Party. The Producing Party shall have the burden of establishing the propriety of the protected status of the Discovery Material. The Court, in its discretion, may award expenses and attorney's fees as sanctions against any party or non-party whom the Court determines has in bad faith claimed protected status for Discovery Material. Until the Court enters an Order changing the designations for a particular document, the document shall be given treatment in accordance with the designation given by the Producing Party.

Nothing herein shall operate as an admission by any Party that any particular Discovery Material contains "Confidential Material" or "Outside Attorneys' Eyes Only Material" for purposes of determining the merits of the claims in this litigation. A party shall not be obligated to challenge the propriety of the designation of any Discovery Material at the time such designation is made; failure to do so shall not preclude a subsequent challenge. Further, a Party's failure to challenge a designation during pretrial discovery shall not preclude a subsequent challenge of such designation at trial or in connection with motion practice concerning the merits of the claims of this litigation.

8

6.    Filing Documents with the Court.

Any party who files with the Court a pleading or other paper that contains or has attached thereto Confidential Material or Outside Attorney's Eyes Only Material shall seal that pleading or other paper in an envelope bearing the caption of the action and following legend:

CONFIDENTIAL

"This envelope contains documents or transcripts that are subject to a Stipulation and Protective Order. This envelope shall not be opened nor the contents thereof displayed or revealed except by and to the Court and its staff, or otherwise by Order of Court. Violation thereof may be regarded as contempt of court."

A filed paper containing Confidential Material or Outside Attorney's Eyes Only Material shall be kept under seal until further Order of the Court.

7.    Conclusion of Litigation.

(a) The provisions of this Stipulation and Protective Order regarding the use and disclosure of Confidential Materials and Outside Attorney's Eyes Only Materials shall survive the conclusion of this action.

(b) Promptly upon the conclusion of this action, all Confidential Materials shall be (at the Receiving Party's option) either destroyed or returned to the Producing Party. Counsel of record shall certify compliance herewith and serve such certification on opposing counsel not more than 150 days after a final termination of the action (including any appeals). Parties and counsel may retain copies of papers filed with the Clerk of Courts in this action which contain Confidential Material, provided such papers are maintained in accordance with the restrictions contained in this Stipulated Protective Order. Parties and counsel may retain notes and

9

correspondence which contain Confidential Material, provided such notes and correspondence are kept under seal.

(c) Promptly upon the conclusion of this action, all Attorney's Eyes Only Materials shall be returned to the Producing Party. Counsel may retain copies of papers filed with the Clerk of Courts in this action which contain Outside Attorney's Eyes Only Material, provided such papers are maintained in accordance with the restrictions contained in this Stipulation and Protective Order. Counsel may retain notes, correspondence, and any work product materials which contain Outside Attorney's Eyes Only Material, provided such notes, correspondence, and work product materials are maintained in accordance with the restrictions contained in this Stipulation and Protective Order, and are kept under seal.

8.   No Waiver.

(a) This Stipulation and Protective Order does not preclude, upon an appropriate showing, either (i) the Producing Party from seeking and obtaining additional protection for specific material, or (ii) any Party from seeking and obtaining relief from some or all of the restrictions contained in this Stipulation and Protective Order.

(b) This Stipulation and Protective Order does not limit the Producing Party's use of its own Discovery Materials.

                                        SO ORDERED:


                                        _____
                                        Judge Beverly B. Martin


10

AGREED TO:

BALLARD, STEPHENSON & WATERS, LLP    KING & SPALDING

Eugene D. Butt, Esq.
Georgia Bar No. 099987
1148 Washington Street
P. O. Box 29
Covington, Georgia 30015
(770) 786-8123

Counsel for Mock Pallet Company

Chilton Davis Varner
Georgia Bar No. 725450
W. Randall Bassett
Georgia Bar No. 041525
191 Peachtree Street
Atlanta, Georgia 30303-1763
(404) 572-4600

Counsel for CHEP USA

11

EXHIBIT A

NON-DISCLOSURE AGREEMENT

I, _____, hereby certify my understanding that Discovery Materials that contain Confidential Material are being provided to me pursuant to the terms and restrictions of a Stipulation and Protective Order in CHEP USA v. Mock Pallet Company, United States District Court Northern District of Georgia, Case No. 02-CV-2053-BBM.

I further certify that I have been provided a copy of and have read the Stipulation and Protective Order, and I agree to comply with and be bound by its terms and conditions. I also consent to the jurisdiction of the Court for the purposes of enforcing the Stipulation and Protective Order. I understand that violation of the Stipulation and Protective Order is punishable by contempt of court.

Date: _____        Signature: _____

Sworn to before me and subscribed in my presence this _____ day of

_____, 200___.


_____
Notary Public

My Commission expires: _____

12



# EXHIBIT / ATTACHMENT

$C$

(To be scanned in place of tab)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York Partnership, )
)
            Plaintiff, )
)     CASE NO. 1:02-CV-2053
v. )
)
MOCK PALLET COMPANY, )
a Georgia Corporation, )
)
           Defendant. )

County of Orange
State of Florida

### AFFIDAVIT OF SEAN J. MURPHY

Appearing before me, Mr. Sean J. Murphy testified as follows:

1.    My name is Sean J. Murphy. I am Senior Vice President and General
Counsel of CHEP International, Inc. I provide legal services to CHEP USA,
CHEP International, Inc. and other CHEP entities around the world
(collectively, "CHEP"), and I am responsible for overseeing and directing all
litigation involving CHEP USA, including this lawsuit. I am the only in-
house counsel providing legal services to CHEP USA. I am a member in
good standing of the Massachusetts Bar and have been a member of this Bar
continuously since 1992. I am not an officer or a member of the partnership
committee of CHEP USA.

2.    In my position as Senior Vice President and General Counsel of CHEP
International, Inc., I spend approximately 25% of my time overseeing
litigation or potential litigation involving CHEP USA. The remainder of my
time is spent providing legal advice on various matters to CHEP. I also am
involved, from time-to-time, in providing advice on high-level or strategic
business decisions as they relate to my legal expertise.

3.    I understand that Mock Pallet Company objects to my reviewing information
      about its customers, specifically the names of entities from whom it collects
      CHEP pallets and to whom it provides CHEP pallets. I also understand that
      Mock objects to me reviewing documents describing transactions with these
      customers involving CHEP pallets. My responsibilities at CHEP USA do
      not involve decisions that could be affected by the disclosure of Mock's
      customer information. I am not involved in competitive business decisions
      relating to specific customers or potential customers. I am not involved in
      decisions to identify or solicit prospective customers. Likewise, I am not
      involved in individual decisions about the pricing of CHEP USA's services,
      including rental fees for CHEP pallets, or in individual decisions about the
      marketing of CHEP USA's services.

4.    My involvement in business decisions within CHEP USA are limited to
      those that may affect the company as a whole, as opposed to individual
      customers, and to those that directly involve litigation, the potential for
      litigation or other legal issues.

5.    While litigation is pending, I am asked by management of CHEP USA to
      report on the status of litigation and to provide my legal judgment
      concerning the likely outcome of a particular lawsuit. I also may be asked to
      comment on the potential business impact of litigation. To meet my
      obligations and provide an informed assessment of current litigation, it is
      important for me to understand all of the facts developed during discovery.
      Likewise, it is important for me to communicate openly and freely with
      outside counsel concerning a particular lawsuit. My ability to assess a
      lawsuit candidly and to communicate frankly with outside counsel will be
      hindered significantly, if outside counsel is unable to provide me with
      information concerning Mock's receipt of CHEP pallets and Mock's transfer
      of CHEP pallets.

6.    I also take an active role in managing the litigation of CHEP USA. This
      includes strategizing with outside counsel about the direction of litigation. It
      also includes reviewing pleadings and discovery from outside counsel,
      participating in witness interviews, preparing discovery responses, and
      collecting documents for production in response to discovery requests. My
      knowledge about CHEP USA and its litigation -- both past and current -- is
      valuable to outside counsel in facilitating their representation of CHEP. My
      ability to assist and direct outside counsel effectively requires me to have
      access to all information exchanged by the parties during discovery.

2

7.    I have reviewed the terms of CHEP's proposed Protective Order and will adhere to its terms. I will not, and indeed have no need to, share business information about Mock with other employees or officers of CHEP USA. My need for this information is limited strictly to my responsibilities as General Counsel in overseeing and managing the litigation of CHEP USA and specifically this lawsuit, and being fully informed so I may make strategic decisions about this litigation.

FURTHER AFFIANT SAYETH NOT.

This _14th_ day of February, 2003.

Sean J. Murphy

Signed before me this 14th day of
February , 2003.

Notary Public

(SEAL)

MELISSE LYNNE LEOPOLD
Commission # DD0167621
Expires 11/25/2006
Bonded through
(800-432-4254) Florida Notary Assn., Inc.

My term expires: _11/25/2006_

3



# EXHIBIT / ATTACHMENT

## _____D_____

(To be scanned in place of tab)

CARPENTER TECHNOLOGY CORP., Plaintiff, v. ARMCO, INC.,Defendant
Civil Action No. 90-0740

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OFPENNSYLVANIA

132 F.R.D. 24; 1991 U.S. Dist. LEXIS 21609

June 26, 1991, Decided
June 28, 1991, Filed

CASE SUMMARY

PROCEDURAL POSTURE: Plaintiff technology corporation filed an action against defendant patent licensee alleging breach of settlement agreement in the United States District Court for the Eastern District of Pennsylvania. The technology corporation filed a motion for a protective order permitting equal access to confidential information to in-house and outside counsel. The patent licensee sought to prohibit in-house counsel from such access.

OVERVIEW: The technology corporation asserted that the denial of access to confidential information to in-house counsel was not to be premised solely on their status as in-house counsel. The patent licensee asserted that the technology corporation's in-house counsel should not have access to confidential information due to the patent licensee's concern that the technology corporations' in-house attorneys were involved in the daily commercial activities of the technology corporation, and disclosure of the patent licensee's confidential material could give the in-house attorneys an unfair business advantage. The court held that based on an affidavit, one in-house attorney of the technology corporation was not involved in competitive decision making, and his specialized knowledge could be essential to the proper handling of litigation by outside counsel. Therefore, the court granted access to confidential information to that attorney. With respect to a second in-house attorney, the court held that an affidavit indicated that the attorney was involved in competitive business decisions. Therefore, the court denied access to confidential information to that attorney.

OUTCOME: The court granted the technology corporation's motion for a protective order in part and denied it in part.

CORE CONCEPTS -

Civil Procedure: Disclosure & Discovery: Protective Orders
Upon the motion of a party or by the person from whom discovery is sought and for good cause shown, a district court may make any order which justice requires to protect a party or person so that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way. Fed. R. Civ. P. 26(c)(7). In order to accomplish this end, a court has broad discretion in fashioning appropriate protective orders.

Civil Procedure: Disclosure & Discovery: Protective Orders
The exercise of the district court's discretion must be guided by the liberal federal principles favoring disclosure, keeping in mind the need to safeguard confidential information transmitted within the discovery process from disclosures harmful to business interests. Although the disclosure of confidential information should not preclude discovery, courts have been willing to restrict the unnecessary disclosure of sensitive material. Also, the federal circuit has recognized that in the context of an intellectual property case, that the irreparable harm that can be suffered by the disclosing party may outweigh the need for disclosure of even highly relevant information to a competitor.

Civil Procedure: Disclosure & Discovery: Protective Orders
Denial of access to confidential information by in-house counsel should not be premised solely on their status as in-house counsel. On the other hand, the fact that in-house counsel are bound by the rules of professional responsibility is insufficient alone to warrant granting access to confidential information of a competitor to in-house counsel.

Page 4

132 F.R.D. 24, *; 1991 U.S. Dist. LEXIS 21609, **

Notwithstanding the rules of professional conduct, the inadvertent use or disclosure of confidential information remains a major concern.

Civil Procedure: Disclosure & Discovery: Protective Orders
Denial of access to information should be made solely on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained.

COUNSEL: [**1]

For Plaintiff: Richard C. Rizzo, Esq., Dechert Price & Rhoads, David F. Sorensen, Esq., Robert A. Limbacher. Philadelphia, Pennsylvania.

For Defendant: Robert A. Nicholas, Esq., Reed Smith Shawl & McClay, Attorney for Defendant, Arland T. Stein, Philadelphia, Pennsylvania.

JUDGES: Daniel H. Huyett, 3rd, United States District Judge.

OPINIONBY: HUYETT

OPINION: [*25] MEMORANDUM AND ORDER

HUYETT, District Judge.

In this action, plaintiff Carpenter Technology Corp. ("Carpenter") alleges that defendant Armco, Inc. ("Armco") breached a settlement agreement ("the settlement agreement") reached in a patent validity suit. Pursuant to the settlement agreement, Carpenter agreed to continue paying royalties to Armco under a license agreement executed in 1973. However, in the event that Armco's patent was declared invalid in litigation ("the Cyclops action") pending in the Western District of Pennsylvania between Armco and Cyclops Corporation ("Cyclops"), Armco agreed to reimburse plaintiff for all royalties paid from the date of the settlement agreement. Further, the settlement agreement provided that a settlement of the Cyclops action would entitle Carpenter to reimbursement of a portion of [**2] the royalties paid, if the Cyclops action "terminated by settlement which has the effect of according Cyclops an effective royalty rate less than or more favorable to Cyclops than the royalty rate provided for in the Armco/Carpenter License Agreement of December 31, 1973."

Carpenter maintains that the settlement of the Cyclops action afforded Cyclops an effective royalty rate less than or more favorable than the royalty rate paid by Carpenter. Because Armco denies this fact, Carpenter alleges that Armco breached the settlement agreement and seeks reimbursement from Armco of royalties paid in excess of the effective royalty rate paid by Cyclops plus interest, costs and attorney's fees. n1

n1 The detailed discussion of the factual background of this suit set forth in an earlier memorandum and order of this Court is incorporated herein by reference. See Carpenter Technology Corp. v. Armco, Inc., 1990 U.S. Dist. LEXIS 5538 Civil Action No. 90-0740, slip op. at 2-5 (E.D. Pa. May 7, 1990) (available on the WESTLAW DCTU Database -- 1990 WL 61180).

[**3]

[*26] Resolution of this dispute requires the production of confidential information by Carpenter, Armco and Cyclops n2 during discovery. Therefore, all interested parties n3 agree that a protective order is necessary to safeguard the parties' confidential and proprietary information and documents. With one exception, the parties have agreed upon the terms of a protective order. n4 Specifically, Carpenter wishes to permit equal access to confidential documents and information to both in-house and outside counsel, while Armco wishes to prohibit in-house counsel from having access to confidential documents and information. Compare Carpenter Proposed Protective Order at para. 6 with Armco Proposed Protective Order at para. 6. I note that Cyclops has agreed to the form of protective order proposed by Carpenter. For the reasons stated below, I resolve this issue in favor of Carpenter. However, in-house counsel access to confidential information by Carpenter shall be restricted to L. Dale Pretz, Esquire, a Senior Staff Attorney for Carpenter.

n2 While Cyclops is not a party to this action, it has agreed to cooperate with Carpenter's efforts to resolve this dispute by providing the necessary information in its possession.

[**4]

n3 For the sake of convenience, references to "all interested parties" or "the parties" shall include Cyclops.

Page 5

132 F.R.D. 24, *; 1991 U.S. Dist. LEXIS 21609, *-

n4 Carpenter and Armco formerly disagreed as to which party should bear the burden of persuasion if a motion seeking to have certain documents designated non-confidential is filed. This disagreement has been resolved. See Armco Memorandum at 2 n.1; Carpenter Reply Memorandum at 1 n.2.

I.

Upon the motion of a party or by the person from whom discovery is sought and for good cause shown, the court "may make any order which justice requires to protect a party or person" so "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." See Fed.R.Civ.Proc. 26(c)(7). In order to accomplish this end, a court has broad discretion in fashioning appropriate protective orders. See Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc., 784 F.2d 1325, 1346 (7th Cir. 1986).

"The exercise of the court's discretion must be guided by the liberal federal principles favoring disclosure, [**5] keeping in mind the need to safeguard confidential information transmitted within the discovery process from disclosures harmful to business interests." Johnson Foils, Inc. v. Huyck Corp., 61 F.R.D. 405, 409, 180 U.S.P.Q. (BNA) 243 (N.D.N.Y. 1973). Although the disclosure of confidential information should not preclude discovery, courts have been willing to restrict the unnecessary disclosure of sensitive material. Davis v. General Motors Corp., 64 F.R.D. 420, 422, 184 U.S.P.Q. (BNA) 288 (N.D. Ill. 1974). Also, the Federal Circuit has recognized, in the context of an intellectual property case, that the irreparable harm that can be suffered by the disclosing party may outweigh the need for disclosure of even highly relevant information to a competitor. See American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 741 (Fed. Cir. 1987).

In this case, the parties have been able to agree upon a protective order which strictly limits access to confidential materials of the parties. n5 Unfortunately, the agreement does not extend to whether in-house counsel should be permitted access to confidential information. Armco's primary concern is that John R. Welty and L. Dale Pretz, Carpenter's[**6] in-house counsel responsible for this case, are involved in the day-to-day commercial affairs and competitive decision making process of Carpenter. Thus, according to Armco, these gentlemen should not have access to information applicable to the daily commercial activities of [*27] which the in-house counsel are a part. Courts have

recognized the legitimacy of Armco's concern. See, e.g., Akzo N.V. v. United States International Trade Commission, 808 F.2d 1471, 1483, 1 U.S.P.Q.2D (BNA) 1241 (Fed. Cir. 1986), cert. denied, 482 U.S. 909, 96 L. Ed. 2d 382, 107 S. Ct. 2490 (1987) ("Obviously, where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased."); F.T.C. v. Exxon Corp., 205 U.S. App. D.C. 208, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("in-house counsel stand in a unique relationship to the corporation in which they are employed . . . . Their continued employment often intimately involves them in the management and operation of the corporation of which they are a part."); D & L Supply Co. v. United States, 12 C.I.T. 732, 693 F. Supp. 1179, 1182 (C.I.T. [**7] 1988) ("The attorneys are not in-house counsel who might be susceptible to demands of their corporate employers to violate a protective order.").

n5 In this instance, "Highly Sensitive Confidential Information" includes information on sales, pricing, costs, profits, customers, accounting and production.

However, Carpenter correctly argues that denial of access to confidential information by in-house counsel should not be premised solely on their status as in-house counsel. See United States Steel Corp. v. United States, 730 F.2d 1465, 1469 (Fed. Cir. 1984); Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20, 22-23 (D.Del. 1988). On the other hand, the fact that in-house counsel are bound by the rules of professional responsibility is insufficient alone to warrant granting access to confidential information of a competitor to in-house counsel. Notwithstanding the rules of professional conduct, the inadvertent use or disclosure of confidential information remains a major concern. [**8] Allegheny Ludlum Corp. v. Nippon Steel Corp., 1990 U.S. Dist. LEXIS 867 Civil Action No. 89-5940 (E.D. Pa. January 25, 1990) (available on WESTLAW DCTU Database -- 1990 WL 6152); see also A. Hirsh, Inc. v. United States, 11 C.I.T. 208, 657 F. Supp. 1297, 1300 (C.I.T. 1987).

Instead, denial of access to information should be made solely "on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." U.S. Steel Corp., 730 F.2d at 1469. Stated differently, a decision of this magnitude should turn on the in-house counsel's involvement in "competitive decision making" which is "shorthand for a counsel's activities, association, and relationship with a client that

Page 6

132 F.R.D. 24, *; 1991 U.S. Dist. LEXIS 21609, **

are such as to involve counsel's advice and participation in any or all of client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." Id. 730 F.2d at 1468 n3.

II.

Through affidavits attached to its reply memorandum, Carpenter attempts to demonstrate that the in-house counsel it wishes to have access to confidential information are not[**9] involved in the competitive decision making of Carpenter. Therefore, according to Carpenter, there is no risk of harm to Armco. Further, Carpenter asserts that access to confidential information by these attorneys is necessary to assist outside counsel in the management of this litigation. Specifically, Carpenter claims that in-house counsel have particular expertise necessary to guide outside counsel in the proper preparation of the case and to provide in-house counsel with information necessary to assess the desirability of settling this litigation. I will briefly address each individual that Carpenter wishes to have access to confidential information.

A. L. Dale Pretz, Esq.

Mr. Pretz is a Senior Staff Attorney for Carpenter. He has been employed by the company for nearly ten years. During this time, he has provided Carpenter with advise and counsel on general legal and corporate matters. He is not a member of the Board of Directors. Nor is he an officer. Pretz is not related, by blood or marriage, to any officer or employee of Carpenter. He has no involvement with scientific research. Finally, his affidavit provides as follows:

I have absolutely no involvement[**10] in decisions regarding pricing of products or services sold by Carpenter, nor do I participate [*28] in marketing decisions. I also have absolutely no involvement in decisions made by Carpenter regarding product design or production.

See Pretz Affidavit at para. 7.

Based upon this affidavit, I conclude that Pretz is not involved in the competitive decision making of Carpenter. Given the technical nature of this case, the advice of in-house counsel with specialized knowledge of the steel industry could be essential to the proper handling of this litigation by outside counsel. Therefore, I will permit Pretz to have access to confidential information under the protective order provided that he is admitted to practice before this court. n6 As such, he will be bound by the rules of professional conduct to honor the terms of the protective order. However, Carpenter

shall make every effort to avoid placing Pretz in a situation which could jeopardize his ability to comply with the terms of the protective order.

n6 If they wish, Armco and Cyclops may designate a similarly situated individual to have access to confidential information. The identity of such persons should be discussed and resolved by the parties.

[**11]

Despite Armco's protestations to the contrary, see Armco's Reply Memorandum, Pretz's affidavit establishes that he has no involvement in decisions regarding pricing of products or services, he does not participate in marketing decisions, and he has no involvement in decisions regarding product design and development. Therefore, the risk of inadvertent disclosure or use of confidential information is less likely than Armco would have this Court believe.

B. John R. Welty, Esq.

Mr. Welty is Carpenter's Director of Law who has been employed by Carpenter since 1976 in various different legal capacities. He has no family ties, by blood or marriage, to any employee or officer of Carpenter. Although he is an officer, Assistant Secretary, of Carpenter, he is not a member of the Board of Directors. In his position with Carpenter, he has authority to initiate and settle litigation as well as execute written contracts and agreements on behalf of the corporation. He is not involved in scientific research. Finally his affidavit provides as follows:

5. I have no direct responsibility or authority over competitive decisions. Specifically, I have no direct responsibility[**12] or authority over decisions regarding the pricing of products or services sold by Carpenter. Nor do I have direct responsibility or authority over decisions regarding product design or production.

See Welty Affidavit at para. 5 (emphasis added).

Carpenter's reply memorandum and the attached memorandum fail to explain what non-direct responsibility or authority Welty has over competitive decisions. From the affidavit, I must assume that Welty does has some involvement, albeit probably small, with competitive decisions. If he has no such involvement, then I can only assume that his affidavit would have been drafted in a vein similar to that of Pretz. Compare Welty Affidavit at para. 5 with Pretz Affidavit at para. 7. Also, unlike Pretz, Welty does occupy the position of an

Page 7

132 F.R.D. 24, *; 1991 U.S. Dist. LEXIS 21609, *-

officer with the corporation. Finally, Welty is apparently involved in contract negotiations which could involve competitive decision making.

Upon the absence of a complete explanation of the extent of Welty's involvement in competitive decisions, I shall not permit him to have access to confidential information under the protective order. Carpenter has failed to satisfactorily explain[**13] why both Welty and Pretz must have access to confidential information. In fact, granting two persons access to such information, increases the risk of inadvertent disclosure of sensitive materials. My decision denying Welty access to confidential information is, in part, guided by the fact that Pretz will have access to such information and will be able to advise outside counsel concerning technical matters and guide outside counsel throughout the course of this litigation. Pretz, a senior staff attorney, has been with the corporation for nearly ten years. He will be able to advise (without [*29] divulging confidential information) Welty, the individual with authority to settle litigation, on the strengths and weaknesses of Carpenter's case and the desirability of pursuing settlement. Finally, should Carpenter determine in the future that Welty must have access to certain information for some limited purpose, Carpenter could seek the consent of the parties to such access or, as a last resort, seek court approval for such access.

III.

For the reasons stated above, Carpenter's motion for a protective order is granted in part and denied in part. Carpenter's in-house counsel, specifically [**14]L. Dale Pretz, Esq., shall be permitted access to confidential information and documents under the protective order as agreed by the parties. Absent an agreement of the parties or further order of this Court, John R. Welty, Esq., Director of Law and Assistant Secretary for Carpenter, shall not be permitted access to confidential information and documents under the protective order.

An appropriate order follows.

ORDER - June 28, 1990, Filed

Upon consideration of plaintiff Carpenter Technology Corp.'s Motion for a Protective Order, defendant Armco, Inc.'s response, plaintiff's reply memorandum, defendant's reply memorandum, and for the reasons stated in the attached memorandum, it is ordered as follows:

(a) Carpenter's Motion for a Protective Order is GRANTED IN PART AND DENIED IN PART;

(b) After conferring with counsel for Armco and Cyclops, Carpenter shall submit a proposed protective order for my signature within ten (10) days of the date this order is docketed by the Clerk. The proposed protective order shall be prepared in conformity with the attached memorandum; and

(c) Carpenter shall serve a copy of the attached memorandum and this order upon counsel for Cyclops forthwith. [**15]

IT IS SO ORDERED.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHEP USA, a New York Partnership, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 02-CV-2053-BBM |
| | ) | |
| MOCK PALLET COMPANY, | ) | |
| a Georgia Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF**

**CHEP USA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**

**PROTECTIVE ORDER** was served upon counsel for defendant by depositing

same in the United States mail, with sufficient postage thereon to insure delivery, and

addressed as follows:

> Eugene D. Butt, Esq.
> Ballard, Stephenson & Waters, LLP
> P.O. Box 29
> Covington, GA 30015.

This 14th day of February, 2003.

W. Randall Bassett
Georgia Bar No. 041525