IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York Partnership, )
)
      Plaintiff, ) Case No. 02-CV-2055
)
vs. )
)
MOCK PALLET COMPANY, )
A Georgia Corporation, )
)
      Defendant. )

## MOTION TO COMPEL

Defendant, Mock Pallet Company move the Court for an Order compelling CHEP USA to produce documents responsive to Defendant's Request to Produce Documents Numbers 3, 5, 7, 8, 19, 20, 26, 30, 31, 35, 36 and 37 and for an Order compelling CHEP USA to answer Defendant's Interrogatory Numbers 3, 4, 5, 7 and 8.

Furthermore Defendant requests that CHEP USA be required to pay expenses including attorneys fees for the prosecution of this Motion.

Attached as Exhibit "A" is a Rule 37(2)(A) certificate noting a good faith effort to confer with Plaintiff's counsel in an attempt to resolve the dispute.

I. BACKGROUND INFORMATION

Mock is in the business of recycling and/or repairing wooden pallets for resale. Wooden pallets are used as platforms on which goods such as groceries are shipped.

CHEP makes wooden pallets and at any given time, according to its Complaint, has tens of millions of pallets in circulation. CHEP sued Mock, alleging that Mock converted approximately 5,000 pallets that Mock has in its Covington location (Complaint, Par. 15)

1



Mock has denied the demands of CHEP. It asserts that CHEP has abandoned these pallets. It further contends that any CHEP marked pallet in its possession was acquired through no fault of Mock, that they were acquired in the ordinary course of business and that CHEP, has no absolute right to assert ownership of pallets that leak out of the system, especially those pallets for which CHEP has been reimbursed by the assessment of the fee in lieu of the pallet, which is part of the consideration given to CHEP USA by the signatories of its agreements. Mock further asserts that under these circumstances it has become the owner of these pallets and has the right to exercise dominion and control over such stray and abandoned CHEP marked pallets.

Since CHEP-marked pallets are indistinguishable from one another, CHEP does not require that the specific CHEP marked pallet be returned. Instead, CHEP's contracts require that any CHEP marked pallet may be returned. Thus, CHEP delivers pallets into circulation without a reasonable expectation that the specific pallet being placed into circulation will be returned to it. Rather, a distributor is permitted to return to CHEP either the original pallet it received, another CHEP marked pallet, or monetary compensation.

As such, CHEP's placement of its pallets into circulation in the State of Georgia constitutes a sale of the goods, rather than a lease or bailment of its pallets, and pallets that are delivered to Mock pass to it as an ordinary sale or exchange.

Because pallets have been transferred to Mock free and clear of any ownership rights claimed by CHEP, CHEP has no legal right to interfere in the recycler's relationship with a distributor or other party that conveyed pallets to Mock. Notwithstanding its lack of a legal right to claim ownership in pallets that have passed Mock, CHEP continues to assert this ownership interest.

Through CHEP's unwillingness or inability to control leaks in the distribution chain, pallets have passed into the possession of any number of entities, including recycling companies. Due to CHEP's negligence and/or their ratification of the fact that 20% of their pallets (which they claim number tens of millions) are "leaked from the pool", CHEP has no knowledge as to these pallets location.

Such neglect constitute abandonment of property by CHEP.

This neglect and abandonment is further evidenced by the fact that Mock has had some of the subject pallets for over four years before CHEP ever filed this action.

Mock also asserts that assuming arguendo that CHEP retains any ownership interest in these pallets, which as stated above, Mock denies. Mock would be entitled to monetary compensation pursuant to a claim for unjust enrichment, as set forth in its Complaint.

Pursuant to FRCP 33 and 34, Mock served upon CHEP USA interrogatories and a Request to Produce Documents. Mock also sent a proposed Protective Order to CHEP USA. CHEP has objected to certain discovery requests. Mock deems the below requests and interrogatories to be relevant to clarify the contentions of the parties and to apprise Mock of what it must seek to disprove. Thus, Mock is seeking that discovery be compelled as set forth below.

REQUEST TO PRODUCE DOCUMENTS NO. 3:

All documents constituting, referring or relating to any contract entered into or renewed since January 1, 1997, between CHEP and any entity, including manufacturers, distributors (whether "participating" or "non-participating"), recyclers or retailers, that purport to govern in any manner the contracting parties' rights or obligations with respect to any pallets that might reasonably be anticipated to be shipped, used, located, possessed or stored in the state of Georgia.

3

CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections and subject to the entry of an appropriate protective order, CHEP will produce representative samples of its contracts with current customers. In addition, from the entities that Defendant identifies in response to Interrogatories 4, 5, 7, 10 and 11 of CHEP's First Interrogatories to Defendant, CHEP will produce, upon entry of an appropriate protective order, copies of written agreements it has with those entities.

REASON DOCUMENTS SHOULD BE PRODUCED

Among the issues to be determined by this Court are:

1. who owns the subject pallets;

2. whether CHEP abandoned these pallets;

3. whether CHEP sold these pallets to any of the entities referred to in Request to Produce No. 3.

Thus, Request to Produce No. 3 is calculated to lead to the discovery of admissible evidence, as it seeks information pertinent to the ownership issue, as well as proving that CHEP has abandoned the subject pallets. It seeks relevant information as to the true nature of the initial transactions involving the pallets once they leave CHEP and it seeks to discover what penalty is assessed for failure to return any pallets specified in the agreement.

CHEP's proposal that once Mock divulge its customer list (a closely guarded trade secret) by answering Interrogatory Nos. 4, 5, 7, 10 and 11, that CHEP will take that list and determine the history of the pallet's odyssey is suspect because:

a) CHEP cannot specifically identify by serial number or any other identifying mechanism, the first manufacturer or distributor who CHEP sold or leased the pallets to.

b) CHEP's structural and operational difficulties in tracking its pallets are legion, as it is estimated that 20% of the millions of pallets it sells or leases are not returned to it.

Thus, Mock should not be required to trust CHEP's representation as to their ability to trace the pallets up the stream or their characterization of these transactions as leases without verification.

CHEP also complains about the burdens that this production entails. However, it does not specify what this burden will entail. Requiring then to collect this data does not automatically constitute a burden. Fagan v. District of Columbia, 136 F.R.D. 5, at 7 (D.D.C. 1991) Capacchione v. Charlotte-Mechlenburg Schools, 182 F.R.D. 486, at 490-491 (W.D. NC. 1998).

As CHEP is claiming damages of $100,000.00 for the alleged conversion and attorneys fees pursuant to O.C.G.A. § 13-6-11 in an unspecified amount, they should not be in a "strong position to complain of burndensome requests". See Biliske v. American Livestock Insurance Company, 73 F.R.D. 124, at 126 (1977).

Accordingly, CHEP should be required to respond to Request to Produce Documents No. 3 as written and not as they propose.

REQUEST TO PRODUCE DOCUMENTS NO. 5:

All documents constituting, referring or relating to any analysis, evaluation or investigation by CHEP, or any agent or independent agency acting on CHEP's behalf, of the costs of recovering pallets not returned by distributors or manufacturers or the "leakage" of CHEP pallets out of its system.

## CHEP'S OBJECTION

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections and subject to the entry of an appropriate protective order, CHEP will produce documents sufficient to demonstrate its costs associated with asset recovery activities in the State of Georgia.

## REASON DOCUMENTS SHOULD BE PRODUCED

The requested discovery is relevant as CHEP contends that it maintains ownership of the subject pallets even after it assesses a penalty against its customers in the event of non-return of the pallet. Thus, what CHEP contends are the costs associated with the retrieval of these stray or abandoned pallets is germane to any analysis of whether CHEP's arrangement with its customers constitutes a sale. This information is also relevant as to Mock's claim for unjust enrichment as it would reveal the extent of any benefit to CHEP.

Thus, the production of this relevant information "will advance the litigation by clarifying a party's contention and apprising a party of what they must seek to disprove. Mack v. W.R. Grace & Co., 578 F. Supp. 626, at 638 (N.D. Ga. 1983).

## REQUEST TO PRODUCE DOCUMENTS NO. 7

All documents constituting, referring or relating to any calculation, analysis, evaluation or investigation by CHEP as to the amount CHEP would charge customers in lieu of the return of pallets to CHEP prepared or used since January 1, 1997.

## CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. CHEP further

6

objects to the characterization of a "charge...in lieu of return of pallets" as argumentative, vague, ambiguous and nowhere defined. CHEP does not assess charges in lieu of a return of pallets. It does, however, invoice customers, manufacturers and distributors for "lost equipment" in circumstances where the customer fails to properly account for CHEP pallets in accordance with the parties contract. Subject to and without waiving these objections and subject to entry of an appropriate protective order, CHEP will produce copies of any Lost Equipment Notes issued to those entities that Defendant identifies in response to Interrogatories 4, 5, 7, 10 and 11 of CHEP's First Interrogatories to Defendant.

REASON DOCUMENTS SHOULD BE PRODUCED

As with Request to Produce Documents No. 3, CHEP again chooses to produce what it determines to be responsive to this inquiry, and not what was called for.

Given the fact that Defendant has made a claim for unjust enrichment in the case, and given the fact that Defendant contends that making customers pay a liquidated sum for not "properly accounting" for CHEP-marked pallets constitutes a sale, this request is relevant. Carter v. Tokai Financial Services, Inc., 231 Ga. App. 755, at 756-757 (1)(500 SE 2d 638)(1998).

Furthermore, what CHEP would charge its customers, not only constitutes evidence of a sale, but also is indicative of what CHEP considers the pallets to be worth.

REQUEST TO PRODUCE DOCUMENTS NO. 8

All documents constituting, referring or relating to any charges or demands made by CHEP to customers doing business in the state of Georgia in lieu of the return of pallets to CHEP.

CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. CHEP further objects to the characterization of "charges or demands...in lieu of the return of pallets" as argumentative, vague, ambiguous and nowhere defined. CHEP does not assess charges or make demands in lieu of the return of pallets. It does, however, invoice customers, manufacturers and distributors for "lost equipment" in circumstances where the customer fails to properly account for CHEP pallets in accordance with the parties contract. Subject to and without waiving theses objections, CHEP refers Defendant to its Response to Request for Production No. 7.

REASON DOCUMENTS SHOULD BE PRODUCED

Defendant should be entitled to discover how much CHEP USA invoices customers, manufacturers and distributors for "lost equipment" in circumstances where the customer fails to account for CHEP-marked pallets in accordance with the parties contract, as this is relevant to the issues of ownership and the extent of any unjust enrichment.

REQUEST TO PRODUCE DOCUMENTS NO. 19

All documents constituting, referring or relating to any actions or investigation undertaken by any police department, sheriff's department, or other local, state, or federal law enforcement body related in any way to any effort of CHEP to recover pallets in any jurisdiction over the past ten years.

CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad and unduly burdensome. CHEP further objects to this interrogatory because documents about criminal investigations associated with the recovery of CHEP pallets is irrelevant to the claims and

defenses asserted by the parties in this case and will not lead to the discovery of admissible evidence. CHEP also objects to this request to the extent it seeks documents protected from disclosure by the attorney client privilege and/or the attorney work product doctrine.

REASON DOCUMENTS SHOULD BE PRODUCED

Request to Produce No. 19 should not be overly broad and burdensome unless CHEP has made a myriad of Complaints to Sheriff Departments.

This request is relevant given CHEP's history of threatening criminal prosecution as a means of trying to control its structural and operational difficulties caused by its abandoning of these pallets, See <u>Bush v. Dictaphone Corp</u>. 161 F. 3d 363, at 367 (6th Cir. 1998).

Moreover, this request bears on the ownership question, since in the Lozano case, the criminal prosecution was dismissed and CHEP settled the malicious abuse of process claim in a confidential settlement.

Furthermore, CHEP has made no showing as to how the attorney-client privilege or work product doctrine would apply to cases in other jurisdictions that preceded this case. Consequently, CHEP should be compelled to respond to this request.

REQUEST TO PRODUCE DOCUMENTS NO. 20

All documents, referring or relating to any non-participating distributors (i.e., distributors who have not executed a written obligation to sort and return pallets to CHEP or its agents) in the state of Georgia (in the past four (4) years) which CHEP knows or believes have received or been sent pallets bearing CHEP's markings, and the volume of such pallets CHEP believes each such non-participating distributor received and how CHEP believes each such distributor disposed of each such pallet.

CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. CHEP further objects to this request to the extent it seeks documents protected from disclosure by the attorney client privilege and/or the attorney work product doctrine.

REASON DOCUMENTS SHOULD BE PRODUCED

This request is relevant to Defendant's contention that CHEP has a) abandoned the pallets, b) has no idea where they end up, c) taken an unreasonable position in expecting businesses such as Mock to handle and sort these pallets, which CHEP has abandoned, for free. See In re Theragenics Corp. Securities Litigation, 205 FRD 631, at 636 (N.D. Ga. 2002).

REQUEST TO PRODUCE NO. 22

Defendant request all documents constituting, referring or relating to:

(a) Any distributor, manufacturer or other entity from whom CHEP alleges Mock has received pallets containing CHEP's markings;

(b) Mock's receipt of such pallets;

(c) Any communications CHEP has had with each such entity concerning its shipment of pallets to Mock, the amount of compensation CHEP has received or demanded from each such entity for pallets shipped to Mock and the individuals at each such entity with who CHEP has communicated orally or in writing concerning the entities obligations to CHEP or obligations not to ship pallets to Mock.

(d) The identity of the pallets in Mock's possession that were received by Mock from non-participating distributors;

(e)     Any tracking information CHEP has in its possession, custody and control concerning any pallet it claims is in Mock's possession;

(f)     Any sources of information upon which CHEP bases its allegations against Mock;

(g)     Any communication CHEP has had with Mock concerning such pallets;

(h)     Any identifying information CHEP claims is contained on each such pallet other than the color it is painted and it's marking with CHEP's logo; and

(i)     Any occasion any employee, agent or representative of CHEP has entered property owned by Mock.

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. CHEP further objects to the extent this request seeks information or documents protected from disclosure by the attorney client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections and subject to entry of an appropriate protective order, CHEP refers Defendant to its Response to Request for Production Nos. 1, 2, 4, 11 and 12.

REASON DOCUMENTS SHOULD BE PRODUCED

This request asks CHEP to identify the source(s) of the CHEP-marked pallets. It also asks CHEP to specifically identify the pallets it is claiming (5,000) that Mock had at the time of the institution of the suit. CHEP's conversion claim should only relate to tangible and specifically identifiable things. CHEP must show title to the property, possession by the Defendant, demand for possession and refusal to surrender the property prior to suit. Thus, Mock should be entitled to discover the breadth of CHEP's knowledge as to the exact number of pallets they claim Mock possessed when this suit was instituted and the origin of the pallets CHEP is claiming Mock

possessed, etc. or see Taylor v. Powertel, Inc.,250 Ga. App. 356, at 358 (2)(551 SE 2d 765)(2001).

## REQUEST TO PRODUCE DOCUMENTS NO. 26

All documents constituting, referring or relating to billings, statements or written requests generated the purpose of which is to obtain reimbursement for lost or leaked pallets in the state of Georgia or which CHEP believes are in the possession of Mock.

## CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. CHEP further objects to the term "lost or leaked pallets" on the grounds that it is argumentative, vague and ambiguous. Subject to and without waiving these objections, CHEP refers Defendant to its Response to Request for Production No. 7.

## REASON DOCUMENTS SHOULD BE PRODUCED

Request to Produce Documents No. 26 is relevant to show that CHEP has virtually lost control of the pallet pool through its neglect, inadvertence and the co-mingling of the CHEP-marked pallets with other pallets. Moreover, it will also evince the fact that what is mischaracterize as a "lease" in actuality constitutes a sale.

## REQUEST TO PRODUCE DOCUMENTS NO. 29

Defendant requests all documents constituting, referring or relating to any damages CHEP claims it has been caused by the actions of Mock.

## CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it seeks documents protected from disclosure by the attorney client privilege and the work product doctrine. Subject to and without waiving its objections, CHEP has no documents responsive to this request.

Mock submits that the objections to Request for Production of Documents No. 29 is spurious since this issue is relevant to CHEP's claim for damages proximately caused by any actions of Mock. One wonders if no such documents exist, how can these phantom documents be privileged or be part of some attorneys work product?

REQUEST TO PRODUCE DOCUMENTS NO. 30

Defendant request all documents which evidences CHEP's expenses of litigation including but not limited to the amount of time expended by any attorney and a description of the task performed by the attorney. These shall include but not be limited to billing statements, invoices, etc..

CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is premature. This case is ongoing and CHEP's litigation costs continue to accrue. CHEP further objects to this request to the extent it seeks documents protected from disclosure by the attorney client privilege and the attorney work product doctrine. CHEP will provide documentation sufficient to determine its litigation costs as required by the Federal Rules of Civil Procedure and any court order when the issue of litigation costs matures.

REASON DOCUMENTS SHOULD BE PRODUCED

Mock request that CHEP respond to Request for Production of Documents No. 30 because the expenses of litigation is another measure of damages being sought by CHEP and should be discoverable now, and not at the time CHEP chooses. The matter of its expenses are

13

being sought by CHEP pursuant to O.C.G.A. § 13-11-16. Thus, Mock has a right to be apprised of what this claim is in order that they can disprove it.

REQUEST TO PRODUCE DOCUMENTS NO. 31

Defendant requests a communication from Ralph Bueno to Bob Wells, senior manager for CHEP, which was sent on or about the time Edgar Lazamo was acquitted (September 29, 1998) wherein among other things, it was stated that "CHEP should start civil action as soon as possible. If we don't, we will lose the San Antonio area and CHEP will experience the domino effect throughout the United States", and all subsequent internal communications that referred to the Bueno to Wells e-mail or memo.

CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. CHEP further objects to this request to the extent this document is protected from disclosure by the attorney-client privilege or work product doctrine.

REASON DOCUMENTS SHOULD BE PRODUCED

Defendant submits that this memo is discoverable as it is relevant to the question of ownership and the litigious nature of CHEP, as well as showing CHEP's plan to use criminal prosecution and the civil courts to attempt to control a "pallet pool" that they have lost control over and have abandoned.

Furthermore, since this document is the subject of a newspaper article, it is not subject to attorney-client privilege; nor is it subject to the work-product doctrine as it was not made by lawyers for trial preparation in anticipation of this litigation, as it was made over four years ago.

## REQUEST TO PRODUCE DOCUMENTS NO. 35

Defendant requests copies of any brokerage analysts reports in the past two (2) years that refer or describe in any way the pallet leakage problem experienced by CHEP USA and its extent.

## CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

## REASON DOCUMENTS SHOULD BE PRODUCED

Mock states this is relevant since it refers to the "pallet leakage problem experienced by CHEP USA". This will aid Defendant in proving that CHEP has abandoned its pallets.

This request is also not overly broad or unduly burdensome as it is seeking report(s) from companies who contact CHEP and with whom CHEP has conferences with and to whom CHEP reports and discusses its business with. Furthermore, it is limited to two (2) years.

## REQUEST TO PRODUCE DOCUMENTS NO. 36

Defendant requests the transcript of any and all depositions taken in the cases involving claims made by Edgar Lozamo in the state of Texas and Buckeye Diamond Logistics, Inc. f/k/a Buckeye Recyclers (U.S. District Court for the Southern District of Ohio, Western Division at Dayton. Case No. 23-01-440).

## CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

## REASON DOCUMENTS SHOULD BE PRODUCED

This matter should be discoverable since these cases also involve the question of the ownership of CHEP-marked pallets. Production of this material is also relevant on issues of credibility and may be used for impeachment purposes.

CHEP has made no showing that the discovery is unduly burdensome. Furthermore, it may avoid the necessity of Defendant having to duplicate discovery efforts and it very likely could prove to be a cheaper, more efficient means of conducting this litigation. Thus, the benefits to be secured from the discovery for outweigh any claim of burden which has yet to be substantiated. See Beach v. City of Olathe Kansas, 203 F.R.D. 489, at 493 (D. Kan. 2001).

## REQUEST TO PRODUCE DOCUMENTS NO. 37

Defendant requests all documents produced by CHEP USA in Case No. 23-01-440 referred to in No. 36 above, wherein Buckeye Diamond Logistics, Inc. f/k/a brought suit against CHEP USA in Ohio.

## CHEP'S OBJECTIONS

CHEP objects to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

## REASON DOCUMENTS SHOULD BE PRODUCED

Mock states that Request to Produce No. 37 should be discoverable since this case also involves the question of ownership of CHEP-marked pallets. Production of this material is relevant on issues of credibility and may be used for impeachment purposes.

Furthermore, it may avoid the necessity of Defendant having to duplicate discovery efforts and it very likely could prove to be a cheaper, more efficient means of conducting this litigation.

## INTERROGATORY NO. 3

Defendant requests that Plaintiff identify all individuals, companies or entities to whom CHEP USA has sold, leased or transferred pallets in the State of Georgia in the last four (4) years.

## CHEP'S OBJECTIONS

CHEP objects to this interrogatory because it asks for competitively sensitive information and because it is overly broad and will not lead to the discovery of admissible evidence. CHEP further objects to this interrogatory because the term "transfer" is vague, ambiguous, and nowhere defined. CHEP does not sell or "transfer" ownership of pallets to other individuals, companies or entities. CHEP contracts for the lease of pallets and for the return of empty pallets. Subject to and without waiving these objections and subject to entry of an appropriate protective order, CHEP will identify, from the entities that Defendant identifies in response to Interrogatories 4, 5, 7, 10 and 11 of CHEP's First Interrogatories to Defendant, those entities to whom CHEP has leased pallets in the last four years.

## REASON INTERROGATORY SHOULD BE ANSWERED

Mock submits that Interrogatory No. 3 asks for relevant information because Defendant is entitled to discover who CHEP USA "leases" pallets to in order to determine the nature of each particular transaction, as the central question to be decided in this case is ownership of the CHEP-marked pallets. Consequently, Defendant should be permitted to delve into specific transactions and not be required to accept without question or investigation CHEP's characterization of the transaction. Furthermore, CHEP should not be permitted to limit the inquiry to only certain entities and to exclude others.

INTERROGATORY NO. 4

Defendant request that Plaintiff identify all individuals, companies or entities who, in the past four (4) years have not returned all of the pallets referred to in Paragraph 8 of Plaintiff's Complaint and state how much has been collected by CHEP in lieu of the return of a pallet(s) for each individual, company or entity.

CHEP'S OBJECTIONS

CHEP objects to this interrogatory because it asks for competitively sensitive information and is overly broad. CHEP further objects to this interrogatory because information about entities that have not returned CHEP pallets and any fees paid by those entities is irrelevant to the claims and defenses asserted by the parties in this case and will not lead to the discovery of admissible evidence. CHEP further objects to the characterization of "collected...in lieu of return of a pallet(s)" as argumentative, vague, ambiguous and nowhere defined. CHEP does not collect money in lieu of a return of pallets. It does, however, invoice customers, manufacturers and distributors for "lost equipment" in circumstances where the customer fails to properly account for CHEP pallets in accordance with the parties' contract. Subject to and without waiving these objections and subject to entry of an appropriate protective order, CHEP refers Defendant to its Response to Request for Production No. 7 wherein CHEP has agreed to produce copies of any Lost Equipment Notes issued to entities identified by the Defendant in response to Interrogatories 4, 5, 7, 10 and 11 of CHEP's First Interrogatories to Defendant.

REASON INTERROGATORY SHOULD BE ANSWERED

Interrogatory No. 4 is relevant to the following contentions of Mock: a) CHEP contends that its written agreement with its customers expressly provides that participating manufacturers and distributors will be assessed a replacement fee to be paid in lieu of returning a like number of

18

CHEP marked pallets. CHEP assesses on these customers a liquidated amount, which it asserts is the value of the CHEP marked pallet. Payment of this fee absolves the manufacturer or distributor from further responsibility to return the number of CHEP marked pallets that it is short. This constitutes a sale; and b) CHEP abandons the pallets.

Accordingly, Defendant has established that good cause exists for Plaintiff to provide these names, and not be limited to only those "entities identified by Defendant in response to Interrogatories 4, 5, 7, 10 and 11 of CHEP's First Interrogatories to Defendant.

INTERROGATORY NO. 5

Defendant request that Plaintiff state the name and address of each non-participating distributor in the state of Georgia referred to in Paragraph 9 of Plaintiff's Complaint and for each such Non-Participating distributor state what percentage of CHEP-marked pallets that such entity returns.

CHEP'S OBJECTIONS

CHEP objects to this interrogatory because it asks for competitively sensitive information and is vague and ambiguous. CHEP does not understand what relative "percentage of CHEP-marked pallets that such entity returns" the Defendant is seeking in this interrogatory. Subject to and without waiving these objections and subject to entry of appropriate protective order, CHEP will identify, form those entities that Defendant identifies in response to Interrogatories 4, 5, 7, 10 and 11 of CHEP's First Interrogatories to Defendant, any non-participating distributors of CHEP pallets.

REASON INTERROGATORY SHOULD BE ANSWERED

Interrogatory No. 5 is relevant because CHEP USA identifies its practice with respect to Non-participating distributors in Paragraph 9 of Plaintiff's Complaint. It does this in the context

of asserting the methodology it claims it employs in "asserting *its ownership interest in the* CHEP-marked pallets. Therefore, Defendant should be permitted to inquire as to what percentage of the pallets each non-participating distributor returns so that Defendant can ascertain:

1) the extent to which CHEP USA abandons these pallets;

2) the extent to which sales have already transpired with regard to payment made by these entities for these stray pallets.

According to this information is relevant and reasonable calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 7

Do any of CHEP-marked pallets ever leak out of its alleged "one-way" system, and if so, how many CHEP-marked pallets are currently in the possession of recyclers or distributors that have no agreement with CHEP?

## CHEP'S OBJECTIONS

CHEP objects to this interrogatory because it asks for competitively sensitive information, is overly broad and unduly burdensome, and asks for information that is not reasonably calculated to lead to the discovery of admissible evidence. CHEP further objects to this interrogatory because the term "leak" is vague, ambiguous, and nowhere defined. Subject to and without waiving these objections and upon the entry of an appropriate protective order, CHEP will provide information about the balance of CHEP pallets with non-participating distributors to be identified in response to Interrogatory 5.

REASON INTERROGATORY SHOULD BE ANSWERED

The term "leakage" is sufficiently "definite, clear and concise" and it "adequately advises the interrogated party of the information requested. Capacchione, supra, at 491.

Curiously, in Request to Produce No. 35 CHEP shows its understanding of the term "leakage". Furthermore, its is a term used by Credit Suisse First Boston, a brokerage house that analyzes CHEP for Wall Street.

Again, the matter requested is relevant to the issues of ownership and abandonment of the stray CHEP-marked pallets.

Accordingly, CHEP should be required to produce documents responsive to this request.

INTERROGATORY NO. 8

Identify all of the contract manufacturers who participate in CHEP's Accelerated Volume Program (AVP) and who ship CHEP-marked pallets to Non-Participating Distributors or NPDs.

CHEP'S OBJECTIONS

CHEP objects to this Interrogatory because it asks for competitively sensitive information and is overly broad and unduly burdensome. CHEP further objects to this Interrogatory because information about the Accelerated Volume Program is irrelevant to the claims and defenses asserted by the parties in this case and will not lead to the discovery of admissible evidence.

REASON INTERROGATORY SHOULD BE ANSWERED

The information called for in Interrogatory No. 8 is relevant because only by identifying how many CHEP-marked pallets are shipped to Non-participating distributors, can this Court appreciate the time, extent and heavy volume of CHEP-marked pallets that are abandoned and stray from this erroneously designated, closed, "one-way system".

Consequently, this information is relevant and calculated to lead to the discovery of admissible evidence, as it is necessary by Mock to disprove CHEP's erroneous claim of ownership. It is also relevant as it shows how much CHEP pays to pallet recyclers who retrieve CHEP's abandoned and stray pallets.

This *18th* day of February, 2003.

BALLARD, STEPHENSON & WATERS, LLP
Attorney for **Defendant**

By: _Eugene D. Butt_____

                Eugene D. Butt
                Georgia Bar No. 099987

1148 Washington Street
P. O. Box 29
Covington, Georgia 30015
(770) 786-8123

EXHIBIT "A"

## RULE 37(2)A CERTIFICATION

I, Eugene D. Butt, attorney for Defendant, Mock Pallet Company do hereby certify that I have in good faith conferred with counsel for Plaintiff, CHEP USA, Randall Bassett in an effort to secure the disclosure sought in Defendant's discovery without court action.

This _18_ day of ___FEB___, 2003.

_____
Eugene D. Butt
Georgia Bar No. 099987

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHEP USA, a New York partnership, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File |
| | ) | No. 02-CV-2053 |
| vs. | ) | |
| | ) | |
| MOCK PALLET COMPANY, | ) | |
| a Georgia Corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing MOTION TO COMPEL upon counsel by depositing a copy of same in the United States Mail in a properly addressed envelope with adequate postage thereon to:

KING & SPALDING
Chilton Davis Varner
W. Randall Bassett
191 Peachtree Street
Atlanta, Georgia 30303-1763

This _18th_ day of February, 2003.

BALLARD, STEPHENSON & WATERS, LLP
Attorney for Defendant

By: _____
     Eugene D. Butt
     Georgia Bar No. 099987

1148 Washington Street
P. O. Box 29
Covington, Georgia 30015
(770) 786-8123