FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 2 6 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York partnership,   )
                                    )
        Plaintiff,                  )
                                    )        CIVIL ACTION
                                    )        NO. 02-CV-2053-BBM
vs.                                 )
                                    )
MOCK PALLET COMPANY,                )
a Georgia Corporation               )
                                    )
        Defendant.                  )

## RESPONSE TO MOTION FOR PROTECTIVE ORDER

INTRODUCTION

While the parties agree that a Protective Order is necessary to govern the production and use of documents produced in this case, the parties have been unable to agree on two things:

1. Whether certain documents requested are relevant;

2. Scope of disclosure.

The scope of disclosure is the subject of CHEP's Motion for a Protective Order. The relevancy of the documents is the subject of Motions to Compel brought by each side.

Mock seeks to limit disclosure of relevant confidential matters to outside counsel only (See Exhibit "A') while CHEP wants to add Vice-President and General Counsel, Sean Murphy, to its counsel list. Murphy is not a member of the Georgia bar, nor is he signatory on any of the pleadings in this case.

1

## THE TEST TO BE EMPLOYED

The parties have already agreed that a Rule 26(c)(7) Protective Order is warranted. The question before this Court in the instant motion is whether CHEP USA's in-house counsel should have access to confidential information produced by Mock.

U.S. Steel Corp. v. United States, 730 F. 2d 1465, at 1469 (Fed. Cir. 1984), cited by CHEP only holds that "status as in-house counsel cannot alone create that serious risk to confidentiality and cannot therefore serve as the sole barrier for denial of access [to confidential matters]". (emphasis supplied). Thus, "access should be denied or granted on the basis of each individual counsel's activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." Id. at 1469.

In Brown Bag Software v. Symantec Corp., 960 F. 2d 1465 (9th Cir. 1992), the Court applied a balancing of interest test. See also, In re Wilson, 149 F. 3d 249, at 252 (4th Cir. 1998), (approving a balancing analysis where Bard's need for the information was acute, since without disclosure of the Judgment and Memorandum to its employees they would be unable to understand the claim alleged against it in a separate action in which they were not a party.)

In Brown Bag Software, Symantec Corp. moved for a Protective Order prohibiting Brown Bag's in-house counsel from having access to confidential materials. The magistrate granted the Order, allowing access by Brown Bag only through an outside consultant, as Brown Bag's outside counsel had withdrawn from the case.

The Brown Bag Court held that "the proper review for Protective Orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained. Further, the nature of the claims and the party's opportunity to develop its case through alternative discovery procedure

2

factors into decisions on the propriety of such Protective Orders . . . the magistrate had to consider, however, not only whether the documents could be locked up in cabinets, but also whether Brown Bag's counsel could lock up trade secrets in his mind, safe from inadvertent disclosure to his employer once he read the documents....

The Ninth Circuit affirmed the magistrate's conclusion that "Brown Bag's counsel's (who advised Brown Bag "on a gamut of legal issues, including contracts, marketing and employment") employment could necessarily entail advising his employer in areas relating to Symantec's trade secrets. "Knowledge of Symantec's trade secrets would place in-house counsel in the 'untenable' position of having to refuse his employer legal advice on a host of contract, employment and competitive marketing decisions, lest he improperly or indirectly reveal Symantec's trade secrets . . . Brown Bag's in-home counsel was thus involved in the kind of "competitive decision making" that counsels against disclosure under the U.S. Steel analysis". Id. at 1471. See also, F.T.C. v. Exxon Corp., 636 F. 2d 1336, 1350 (D.C. Cir., 1980) (barring the corporation's in-house counsel from accessing confidential information).

CHEP cites Akzo N.V. v. United States International Trade Commission, 808 F. 2d 1471 (Fed. Cir. 1986), cert. denied 482 U.S. 909 (1987) on page 3 of its brief. Therein, Akzo challenges a decision, which prohibited three designated members of its in-house counsel team even limited access to DuPont's confidential information. The ALJ reasoned that "Akzo failed to demonstrate a need for either its in-house counsel or its general manager to have access to the requested confidential material. The Akzo Court emphasized the following salient points in upholding the restricted protective order:

1. All the protected information was available to outside counsel "who could fully consider it as long as they did not show or repeat it to Akzo's management or in-house counsel;

2. The protective order provided a mechanism by which either party was free to object to its adversary's designation of confidential material at any stage of the proceeding;

3. Where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased.

4. Akzo failed to demonstrate "clearly a need for granting access to confidential information to Akzo's in-house counsel.

Applying the Brown Bag balancing analysis, this Court should deny access to confidential information to CHEP's Senior Vice President and General Counsel, Murphy because:

1. All the relevant confidential information will be made available to outside counsel King & Spalding, who are extremely competent and experienced , Akzo, supra.

2. Just like in Brown Bag, Vice President, Murphy is responsible for advising his employer on a "gamut of legal issues." As he states, "I am involved, from time to time, in providing advice on a higher level on strategic business decisions as they relate to my legal expertise. "He notes that the question of ownership of CHEP-marked pallets, is being litigated in a number of courts throughout the country. However, as documented by Credit Suisse First-Boston the issue of the abandonment of the pallets, and the structural problems that CHEP has through its intentional relinquishment of control of the pallet pool bears on CHEP's future strategic

4

business decisions and the stock price of its owner, Brambles Industries, Inc.. Thus, as the <u>Brown Bag</u> Court noted the test is "not only whether the documents could be locked up in cabinets (and Vice President, Murphy, made no assurances that that is where any produced documents would be placed), but also whether CHEP's in-house counsel "could lock up trade secrets in his mind, safe from inadvertent disclosure to his employer once he has read the documents. <u>Brown Bag, supra,</u> at 1471. As defined in <u>U.S. Steel,</u> "competitive decision making" is "shorthand for a counsel's activities, association and relationship with a client that are such as to involve counsel's advice and participation in <u>any</u> or all of the client's decisions (pricing, product design, <u>etc.</u>) made in light of similar or corresponding information about a competitor. <u>U.S. Steel,</u> supra, at 1468 n. 3. (emphasis supplied).

3. It is clear from Vice President, Murphy's affidavit that in his dual role as lawyer and business advisor, he has regular and frequent contact with those involved in the competitive decision making at CHEP, or why else would CHEP be seeking his advise on "high level or strategic business decisions"?

4. No safeguards have been established by CHEP (not even the Brown Bag lockbox or cabinet) to protect against inadvertent disclosure by Vice President, Murphy.

5. There is no mention as to whether Vice-President, Murphy has any stock in CHEP or its parent company, Brambles Industries, Inc., or any mention as to whether he has stock options or other such prerequisites of management that would benefit from revealing Mock's sensitive materials.

6. As a company strategist, he would be in a position to advise or be asked to give advice on business opportunities, such as Mock's customers, the manner in which

5

they acquire pallets, pricing, etc. This is even more compelling since CHEP is also involved in the white pallet business, and through this litigation he may learn about such matters.

7. Unlike patent litigation, where this issue usually crops up, this litigation does not involve highly technical or complex matters or scientific research in which King & Spalding might need someone with specialized knowledge to assist them. In fact, to date, neither side has named an expert witness that might be called to the trial of this action.

8. CHEP agreed to an "Outside Attorneys Eyes Only" in Buckeye Recyclers, Inc. v. CHEP USA, now pending in the United States District Court for the Southern District of Ohio, Case No.C3-01-440 (See Exhibit "B")

Carpenter Technology Corp. v. Armco, Inc. 132 F.R.D. 24 (E.D. Pa. 1991) is inapposite because as the district court judge aptly notes in that case, "given the technical nature of this case, the advice of in-house counsel with specialized knowledge of the steel industry could be essential to the proper handling of this litigation by outside counsel."

The Carpenter Court conditioned in-house counsel, Pretz, access to confidential information on:

1. Getting admitted to practice before the district court where the action was pending so as to be "bound by the rules of professional conduct to honor the terms of the Protective Order; and

2. Carpenter "shall make every effort to avoid placing Pretz in a situation which could jeopardize his ability to comply with the terms of the Protective Order.

6

The Court also permitted Armco to designate a similarly situated individual (a position that does not exist in a small company as Mock Pallet Company) to likewise have access to confidential information. However, the Court did find that Carpenter's other in-house counsel, Welty, had some involvement "albeit probably small with competitive decisions", and denied him access to the confidential information.

## CONCLUSION

Therefore, as a result of the foregoing, the Court should deny CHEP USA Motion for Protective Order and employ the Protective Order submitted by Mock (Exhibit "B" to CHEP's Motion and Exhibit "C" to this Motion).

This 25ᵗʰ day of February, 2003.

BALLARD, STEPHENSON & WATERS, LLP
Attorneys for Defendant

By: _Eugene D. Butt_____

Eugene D. Butt
Georgia Bar No. 099987

1148 Washington Street
P. O. Box 29
Covington, Georgia 30015
(770) 786-8123




USA

EXECUTIVE OFFICES
8517 SOUTH PARK CIRCLE
ORLANDO, FLORIDA 32818-9040
TEL > (407) 370-2437
FAX > (407) 363-5354

Dear Fellow NWPCA Participant:

Best wishes for the New Year.

In just a few short weeks, the NWPCA will be holding its annual meeting on Marco Island, Florida. Several CHEP senior level executives will attend this meeting with the objective of working more closely with the other NWPCA members and participants to further our mutual goals and interests. We would like to review our current asset recovery program and hear your thoughts for any modifications or improvements.

Additionally, we are receiving many more white wood pallets through our Total Pallet Management programs and wish to get your input for a program to offer these pallets to other NWPCA members.

The CHEP Asset Recovery Program was introduced in April 2002 as a solution for compensating pallet recyclers for the cost of returning our pallets to us. Already, over 600 pallet recyclers have joined the program since April. Based on market feedback, we recognize there may be room for modifications to our current offerings that may better meet the needs of those who already participate, as well as encouraging others to join the program.

CHEP generates millions of recycled white wood pallets nationwide through our Total Pallet Management operations. As a member of the NWPCA, we would like to develop a program that is fair and equitable and offer these pallets to more pallet recyclers in the local markets.

CHEP will have a booth at the meeting and members of CHEP management will be available to meet with you. Additionally, we have a tentative schedule for a round table discussion on Monday, February 24th, and the proposed agenda for the round table discussion is as follows:

- Discussion of the current Asset Recovery Program
- Suggested modifications to the Asset Recovery Program
- An overview of the volumes and locations where CHEP has recycled white wood pallets available
- Discussion of potential sales of these white wood pallets to additional members of the pallet recycler community
- Other pallet recycler concerns

We look forward to seeing all of the other NWPCA members at the conference.

Best regards,

Elton Potts
Vice President, Asset Management

IDLING THE WORLD'S
ST IMPORTANT PRODUCTS
**everyday.**



**EXHIBIT**

**B**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**F I L E D**

JAN 1 6 2002

KENNET.. .. MURPHY, Clerk
D... .. .; OHIO

| | | |
|---|---|---|
| Buckeye Recyclers, Inc., | : | |
| | : | |
| Plaintiff, | : | Case No. C3-01-440 |
| | : | |
| vs. | : | Judge Walter Herbert Rice |
| | : | |
| CHEP USA, | : | |
| | : | |
| Defendant. | : | |

## STIPULATION AND PROTECTIVE ORDER

It is hereby stipulated and agreed by and between the parties to this action,
through their respective counsel that the following Protective Order be entered in this action.
Until same is approved and made an Order of the Court, the parties agree to be bound by the
terms hereof. If this case is remanded to the Common Pleas Court, the parties agree to submit an
agreed order, identical in content, to that Court for execution. In the event that either Court
declines to approve this Protective Order, the parties and their counsel shall remain bound by the
terms of this as a stipulation.

    1.    Scope of Protective Order.

        This Stipulated Protective Order applies to all "Discovery Material" produced or
obtained in this action, including all "Confidential Material" and material designated "Outside
Attorney's Eyes Only."

    2.    Definitions.

        (a) "Discovery Material" consists of all documents, testimony, discovery
responses, depositions, transcripts, interrogatory responses, and other information or materials
produced or given by any named party (a "Party") or non-party during discovery in this civil
action. For purposes of this Stipulation and Protective Order, Discovery Material produced by a

present or former officer, director, employee, or agent of a party or non-party shall be deemed to have been produced by that party or non-party. The person or entity who produces Discovery Material is the "Producing Party." Each Party who receives Discovery is a "Receiving Party."

(b) "Confidential Material" consists of any non-public Discovery Material which contains trade secrets or sensitive commercial, financial, or business information, the public disclosure of which is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

(c) "Outside Attorney's Eyes Only" material consists of non-public Discovery Material which contains trade secrets or highly sensitive commercial, financial, or business information, the disclosure of which to employees of the Receiving Party is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

3.    Designation of Information.

(a) The Producing Party shall identify Confidential Material or Outside Attorney's Eyes Only Material by placing on each page of Discovery Material (in such manner as will not interfere with the legibility thereof) a stamp or label indicating that the material is "Confidential" or "Outside Attorney's Eyes Only" or (other than with respect to documents produced) by providing through other reasonable means written notice of the Producing Parties' intent to claim protected status for the Discovery Material. The Producing Party shall identify Confidential Material or Outside Attorney's Eyes Only Material at the time of its production or as set forth in Paragraph 3(b) below. Designation of Discovery Material as Confidential Material or Outside Attorney's Eyes Only Material constitutes a certification by the party and its counsel that the Discovery Materials so designated fall within the definitions set forth in Paragraphs 2(b) and (c) above.

(b) The Producing Party may remedy an inadvertent failure to identify Confidential Material or Outside Attorney's Eyes Only Material by supplemental written notice within a reasonable time after production. Upon receipt of such supplemental written notice, counsel for the Receiving Party shall undertake to recover from their client all copies and abstracts of the Discovery Material that is the subject of the supplemental written notice and shall instruct all persons who viewed the material as to the appropriate treatment thereof.

4.    Disclosure, Use and Handling of Discovery Material.

(a)    The Receiving Parties shall use Confidential Material and Outside Attorney's Eyes Only Material solely for the purposes of this civil action (including depositions and appeals, and specifically excluding business or governmental purpose). Neither the parties nor their counsel shall use or disclose Confidential Material or Outside Attorney's Eyes Only Material beyond the use or disclosure permitted hereunder. The prohibitions on use and disclosure, other than may be specifically permitted by this Stipulation and Protective Order, shall survive any dismissal of or final adjudication of claims raised in this civil action.

(b)    This Stipulation and Protective Order applies to Confidential Material and Outside Attorney's Eyes Only Material used during depositions in this action, provided that counsel for the Producing Party designates the relevant portions of the deposition transcript as Confidential or Outside Attorney's Eyes Only. Such designation shall be either (i) an oral statement made during the deposition which indicates the beginning and end of the testimony so designated, which shall be indicated on the transcript of such a deposition, or (b) a written, notice sent to all counsel of record which specifically indicates the pages so designated.. This written notice shall be given within the earlier of: twenty-one (21) days after the date on which the deposition is delivered to counsel for the Producing Party or three (3) days from the dispositive motion cut-off. All designated testimony and all Confidential Material and/or Outside

Attorney's Eyes Only Material attached as an exhibit to a deposition in this action shall be sealed

and protected from disclosure by this Stipulation and Protective Order.

        (a) The Receiving Parties shall not disclose, describe, or otherwise directly or

indirectly use or make available Confidential Material to any person other than:

> (i)     the Court in which this civil action is pending and its employees;
>
> (ii)    the Parties, including officers, agents, attorneys and employees of any Party;
>
> (iii)   counsel of record for the Parties, and attorneys, paralegals, clerical employees or other staff of such counsel;
>
> (iv)   a witness, to be called at trial or hearing provided that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Confidential Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Confidential Material in questioning any employee or former employee of a Producing Party);
>
> (v)    a deponent provided that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and, three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the

Producing Party. During this three (3) day period,
the Producing Party may object and seek protection
from the Court. (This provision shall not, in any
way, prevent a Producing Party from using their
own Confidential Material in any way nor shall this
provision limit a Receiving Party from using a
Producing Party's Confidential Material in
questioning any employee or former employee of a
Producing Party);

(vi)    counsel for a witness or deponent that has executed
        a Non-Disclosure Agreement in the form attached
        as Exhibit A;

(vii)   a non-party individual retained by a Party for the
        purpose of giving advice or furnishing expert
        witness services in this action, provided that
        individual has executed a Non-Disclosure
        Agreement in the form attached as Exhibit A; and

(viii)  court reporters.

(b) The Receiving Parties shall not disclose, describe, or otherwise directly or

indirectly make available Outside Attorney's Eyes Only Material to any person other than.

(i)     the Court in which this civil action is pending and
        its employees;

(ii)    outside counsel of record for the Parties, and
        attorneys, paralegals, clerical employees or other
        staff of such counsel ("outside counsel" shall
        include Charles T. Brumback, Jr and Kathryn B.
        Hoeck of Akerman, Senterfitt & Eidson, P.A. who
        have agreed to be bound by the terms hereof);

(iii)   a non-party individual retained by a Party for the
        purpose of giving advice or furnishing expert
        witness services in this action, provided that
        individual has executed a Non-Disclosure
        Agreement in the form attached as Exhibit A;

(iv)    court reporters;

(v)     authors and/or recipients of any document bearing
        an Attorney's Eyes Only legend;

(vi)    a witness to be called at trial or hearing provided that, (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and, (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to the Attorney's Eyes Only Material in the course of their employment with the Producing Party); and

(vii)    a deponent, provided that (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party first obtains the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and, (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party provides the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to the Attorney's Eyes Only Material in the course of their employment with the Producing Party).

5.     Challenge to Designations.

The Receiving Party shall have the right to object to the designation of Discovery Material as Confidential Material or Outside Attorney's Eyes Only Material and may apply to the Court for a ruling that such material shall not be so treated, or for a ruling that persons beyond the scope of the persons described in Paragraph 4 above may review the Discovery Material by giving written notice to Producing Party. The Producing Party shall have the burden of establishing the propriety of the protected status of the Discovery Material. The Court, in its discretion, may award expenses and attorney's fees as sanctions against any party or non-party whom the Court determines has in bad faith claimed protected status for Discovery Material. Until the Court enters an order changing the designation for a particular document, the document shall be given treatment in accordance with the designation given by the Producing Party.

Nothing herein shall operate as an admission by any Party that any particular Discovery Material contains "Confidential Material" or "Outside Attorneys' Eyes Only Material" for purposes of determining the merits of the claims in this litigation. A party shall not be obligated to challenge the propriety of the designation of any Discovery Material at the time such designation is made; failure to do so shall not preclude a subsequent challenge. Further, a Party's failure to challenge a designation during pretrial discovery shall not preclude a subsequent challenge of such designation at trial or in connection with motion practice concerning the merits of the claims of this litigation.

6.     Filing Documents with the Court.

Any Party who files with the Court a pleading or other paper that contains or has attached thereto Confidential Material or Outside Attorney's Eyes Only Material shall seal that pleading or other paper is an envelope bearing the caption of the action and following legend:

<div align="center">CONFIDENTIAL</div>

> "This envelope contains documents or transcripts that are subject
> to a Stipulation and Protective Order. This envelope shall not be
> opened nor the contents thereof displayed or revealed except by
> and to the Court and its staff, or otherwise by Order of Court.
> Violation thereof may be regarded as contempt of court."

A filed paper containing Confidential Material or Outside Attorney's Eyes Only Material shall
be kept under seal until further Order of the Court.

    7.    Conclusion of Litigation.

    (a) The provisions of this Stipulation and Protective Order regarding the use and
disclosure of Confidential Materials and Outside Attorney's Eyes Only Materials shall survive
the conclusion of this action.

    (b) Promptly upon the conclusion of this action, all Confidential Materials shall
be (at the Receiving Party's option) either destroyed or returned to the Producing Party. Counsel
of record shall certify compliance herewith and serve such certification on opposing counsel not
more than 150 days after a final termination of the action (including any appeals). Parties and
counsel may retain copies of papers filed with the Clerk of Courts in this action which contain
Confidential Material, provided such papers are maintained in accordance with the restrictions
contained in this Stipulated Protective Order. Parties and counsel may retain notes and
correspondence which contain Confidential Material, provided such notes and correspondence
are kept under seal.

    (c) Promptly upon the conclusion of this action, all Attorney's Eyes Only
Materials shall be returned to the Producing Party. Counsel may retain copies of papers filed
with the Clerk of Courts in this action which contain Outside Attorney's Eyes Only Material,
provided such papers are maintained in accordance with the restrictions contained in this

Stipulation and Protective Order  Counsel may retain notes, correspondence, and any work product materials which contain Outside Attorney's Eyes Only Material, provided such notes, correspondence, and work product materials are maintained in accordance with the restrictions contained in this Stipulation and Protective Order.

8.     No Waiver.

(a) This Stipulation and Protective Order does not preclude, upon an appropriate showing, either (i) the Producing Party from seeking and obtaining additional protection for specific material, or (ii) any Party from seeking and obtaining relief from some or all of the restrictions contained in this Stipulation and Protective Order.

(b) This Stipulation and Protective Order does not limit the Producing Party's use of its own Discovery Materials.

SO ORDERED:

Judge Rice

AGREED TO:

BUCKEYE RECYCLERS, INC.
By its Attorneys

James A. Wilson          (0030704)
Vorys Sater, Seymour and Pease LLP
52 E. Gay Street
Columbus, OH 43215
(614) 464-5606

CHEP U.S.A.
By its Attorneys

John C. McDonald (0012190)
Schottenstein, Zox & Dunn, L.P.A.
41 S. High Street, Suite 2600
Columbus, OH 43215
(614) 462-2221

Bridgette C. Roman
Schottenstein, Zox & Dunn, L.P.A.
41 S. High Street, Suite 2600
Columbus, OH 43215
(614) 462-2348

## EXHIBIT A

## NON-DISCLOSURE AGREEMENT

I, _____, hereby certify my understanding that

Discovery Materials that contain Confidential Material and/or Outside Attorney's Eyes Only

Material are being provided to me pursuant to the terms and restrictions of a Stipulation and

Protective Order in Buckeye Recyclers, Inc. v. CHEP U.S.A., Civil Action No. C3-01-440.

I further certify that I have been provided a copy of and have read the Stipulation

and Protective Order, and I agree to comply with and be bound by its terms and conditions. I

also consent to the jurisdiction of the Court for the purposes of enforcing the Stipulation and

Protective Order. I understand that violation of the Stipulation and Protective Order is

punishable by contempt of Court.

Date: _____          Signature:_____

Sworn to before me and subscribed in my presence this _____ day of

_____, 200_.

_____

Notary Public

My Commission expires: _____

(H3149710 1 )



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York Partnership,        )
                                          )
         Plaintiff,                       )        Case No. 02-CV-2053-BBM
                                          )
vs.                                       )
                                          )
MOCK PALLET COMPANY,                      )
A Georgia Corporation,                    )
                                          )
         Defendant.                       )

## STIPULATION AND PROTECTIVE ORDER

It is hereby stipulated and agreed by and between the parties to this action, through their respective counsel that the following Protective Order be entered in this action. Until same is approved and made an Order of this Court, the parties agree to be bound by the terms hereof.

1.     Scope of Protective Order.

This Stipulated Protective Order applies to all "Discovery Material" produced or obtained in this action, including all "Confidential Material" and material designated "Outside Attorney's Eyes Only."

2.     Definitions.

(a) "Discovery Material" consists of all documents, testimony, discovery responses, depositions, transcripts, interrogatory responses, and other information or materials produced or given by any named party (a "Party") or non-party during discovery in this civil action. For purposes of this Stipulation and Protective Order, Discovery Material produced by a present or former officer, director, employee, or agent of a party or non-party shall be deemed to have been produced by that party or non party. The person or entity who produces Discovery Material is the "Producing Party." Each Party who receives Discovery is a "Receiving Party."

1

(b) "Confidential Material" consists of any non-public Discovery Material which contains trade secrets or sensitive commercial, financial, or business information, the public disclosure of which is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

(c) "Outside Attorney's Eyes Only" material consists of non-public Discovery Material which contains trade secrets or highly sensitive commercial, financial, or business information, the disclosure of which to employees of the Receiving Party is likely to affect adversely the commercial, business, or financial interests of the Producing Party.

3.    Designation of Information.

(a) The Producing Party shall identify Confidential Material or Outside Attorney's Eyes Only Material by placing on each page of Discovery Material (in such manner as will not interfere with the legibility thereof) a stamp or label indicating that the material is "Confidential" or "Outside Attorney's Eyes Only" or (other than with respect to documents produced) by providing through other reasonable means written notice of the Producing Parties' intent to claim protected status for the Discovery Material. The Producing Party shall identify Confidential Material or Outside Attorney's Eyes Only Material at the time of its production or as set forth in Paragraph 3(b) below. Designation of Discovery Material as Confidential Material or Outside Attorney's Eyes Only Material constitutes a certification by the party and its counsel that the Discovery Materials so designated fall within the definitions set forth in Paragraphs 2(b) and (c) above.

(b) The Producing Party may remedy an inadvertent failure to identify Confidential Material or Outside Attorney's Eyes Only Material by supplemental written notice within a reasonable time after production. Upon receipt of such supplemental written notice,

2

counsel for the Receiving Party shall undertake to recover from their client all copies and abstracts of the Discovery Material that is the subject of the supplemental written notice and shall instruct all persons who viewed the material as to the appropriate treatment thereof.

4. Disclosure, Use and Handling of Discovery Material.

(a) The Receiving Parties shall use Confidential Material and Outside Attorney's Eyes Only Material solely for the purposes of this civil action (including depositions and appeals, and specifically excluding business or governmental purpose). Neither the parties nor their counsel shall use or disclose Confidential Material or Outside Attorney's Eyes Only Material beyond the use or disclosure permitted hereunder. The prohibitions on use and disclosure, other than may be specifically permitted by this Stipulation and Protective Order, shall survive any dismissal of or final adjudication of claims raised in this civil action.

(b) This Stipulation and Protective Order applies to Confidential Material and Outside Attorney's Eyes Only Material used during depositions in this action, provided that counsel for the Producing Party designates the relevant portions of the deposition transcript as Confidential or Outside Attorney's Eyes Only. Such designation shall be either (i) an oral statement made during the deposition which indicates the beginning and end of the testimony so designated, which shall be indicated on the transcript of such a deposition, or (ii) a written, notice sent to all counsel of record which specifically indicates the pages so designated. This written notice shall be given within the earlier of: twenty-one (21) days after the date on which the deposition is delivered to counsel for the Producing Party or three (3) days from the dispositive motion cut-off. All designated testimony and all Confidential Material and/or Outside Attorney's Eyes Only Material attached as an exhibit to a deposition in this action shall be sealed and protected from disclosure by this Stipulation and Protective Order.

3

(a) The Receiving Parties shall not disclose, describe or otherwise directly or indirectly use or make available Confidential Material to any person other than:

<div style="margin-left: 2em;">

(i)    the Court in which this civil action is pending and its employees;

(ii)    the Parties, including officers, agents, directors, attorneys and employees of any other Party who have a need to know of such confidential information for purposes of the litigation;

(iii)    counsel of record for the Parties, and attorneys, paralegals, clerical employees or other staff of such counsel;

(iv)    a witness, to be called at trial or hearing provided that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Confidential Material in any way nor shall this provision limit a Receiving Party

</div>

from using a Producing Party's Confidential Material in questioning any employee or former employee of a Producing Party);

(v)     a deponent provided that if the witness is to be shown a Producing Party's Confidential Material by counsel for the Receiving Party, then counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and, three (3) days prior to showing the Confidential Material to the witness, counsel shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Confidential Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Confidential Material in questioning any employee or former employee of a Producing Party).

(vi)    counsel for a witness or deponent that has executed a Non-Disclosure Agreement in the form attached as Exhibit "A";

(vii)   a non-party individual retained by a Party for the purpose of giving advice or furnishing expert witness services in this action, provided that individual has executed a Non-Disclosure Agreement in the form attached as Exhibit "A"; and

(viii) court reporters.

(b) The Receiving Parties shall not disclose, describe, or otherwise directly or indirectly make available Outside Attorney's Eyes Only Material to any person other than:

(i)     The Court in which this civil action is pending and its employees;

(ii)    outside counsel of record for the Parties, and attorneys, paralegals, clerical employees or other staff of such counsel;

(iii)   a non-party individual retained by a Party for the purpose of giving advice or furnishing expert witness services in this action, provided that individual has executed a Non-Disclosure Agreement in the form attached as Exhibit "A";

(iv)   court reporters;

(v)    authors and/or recipients of any document bearing an Attorney's Eyes Only legend;

(vi)   a witness to be called at trial or hearing provided that (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party shall first obtain the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party shall provide the name, address and employer name of the witness to counsel for the Producing Party. During this three (3) day period, the Producing Party may object and seek

protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to the Attorney's Eyes Only Material in the course of their employment with the Producing Party); and

(vii)    a deponent, provided that (a) the witness knows, knew of or in the course of his or her employment had reason to know the substance of the Attorney's Eyes Only Material, (b) counsel for the Receiving Party first obtains the witnesses signature on the Non-Disclosure Agreement in the form attached as Exhibit "A" and (c) three (3) days prior to showing the Attorney's Eyes Only Material to the witness, counsel for the Receiving Party provides the name, address and employer name of the witness to counsel for the Producing Party. During this three day period, the Producing Party may object and seek protection from the Court. (This provision shall not, in any way, prevent a Producing Party from using their own Attorney's Eyes Only Material in any way nor shall this provision limit a Receiving Party from using a Producing Party's Attorney's Eyes Only Material in questioning any employee or former employee of a Producing Party who knew or had access to

the Attorney's Eyes Only Material in the course of their employment with the Producing Party).

5.    Challenge to Designations.

The Receiving Party shall have the right to object to the designation of Discovery Material as Confidential Material or Outside Attorney's Eyes Only Material and may apply to the Court for a ruling that such material shall not be so treated, or for a ruling that persons beyond the scope of the persons described in Paragraph 4 above may review the Discovery Material by giving written notice to Producing Party. The Producing Party shall have the burden of establishing the propriety of the protected status of the Discovery Material. The Court, in its discretion, may award expenses and attorney's fees as sanctions against any party or non-party whom the Court determines has in bad faith claimed protected status for Discovery Material. Until the Court enters an Order changing the designations for a particular document, the document shall be given treatment in accordance with the designation given by the Producing Party.

Nothing herein shall operate as an admission by any Party that any particular Discovery Material contains "Confidential Material" or "Outside Attorneys' Eyes Only Material" for purposes of determining the merits of the claims in this litigation. A party shall not be obligated to challenge the propriety of the designation of any Discovery Material at the time such designation is made; failure to do so shall not preclude a subsequent challenge. Further, a Party's failure to challenge a designation during pretrial discovery shall not preclude a subsequent challenge of such designation at trial or in connection with motion practice concerning the merits of the claims of this litigation.

6.     Filing Documents with the Court.

Any party who files with the Court a pleading or other paper that contains or has attached thereto Confidential Material or Outside Attorney's Eyes Only Material shall seal that pleading or other paper in an envelope bearing the caption of the action and following legend:

<div align="center">CONFIDENTIAL</div>

"This envelope contains documents or transcripts that are subject to a Stipulation and Protective Order. This envelope shall not be opened nor the contents thereof displayed or revealed except by and to the Court and its staff, or otherwise by Order of Court. Violation thereof may be regarded as contempt of court."

A filed paper containing Confidential Material or Outside Attorney's Eyes Only Material shall be kept under seal until further Order of the Court.

7.     Conclusion of Litigation.

(a) The provisions of this Stipulation and Protective Order regarding the use and disclosure of Confidential Materials and Outside Attorney's Eyes Only Materials shall survive the conclusion of this action.

(b) Promptly upon the conclusion of this action, all Confidential Materials shall be (at the Receiving Party's option) either destroyed or returned to the Producing Party. Counsel of record shall certify compliance herewith and serve such certification on opposing counsel not more than 150 days after a final termination of the action (including any appeals). Parties and counsel may retain copies of papers filed with the Clerk of Courts in this action which contain Confidential Material, provided such papers are maintained in accordance with the restrictions contained in this Stipulated Protective Order. Parties and counsel may retain notes and

correspondence which contain Confidential Material, provided such notes and correspondence are kept under seal.

(c) Promptly upon the conclusion of this action, all Attorney's Eyes Only Materials shall be returned to the Producing Party. Counsel may retain copies of papers filed with the Clerk of Courts in this action which contain Outside Attorney's Eyes Only Material, provided such papers are maintained in accordance with the restrictions contained in this Stipulation and Protective Order. Counsel may retain notes, correspondence, and any work product materials which contain Outside Attorney's Eyes Only Material, provided such notes, correspondence, and work product materials are maintained in accordance with the restrictions contained in this Stipulation and Protective Order, and are kept under seal.

8.     No Waiver.

(a) This Stipulation and Protective Order does not preclude, upon an appropriate showing, either (i) the Producing Party from seeking and obtaining additional protection for specific material, or (ii) any Party from seeking and obtaining relief from some or all of the restrictions contained in this Stipulation and Protective Order.

(b) This Stipulation and Protective Order does not limit the Producing Party's use of its own Discovery Materials.

SO ORDERED:

_____

Judge Beverly B. Martin

AGREED TO:

BALLARD, STEPHENSON & WATERS, LLP    KING & SPALDING


_____    _____

Eugene D. Butt, Esq.                      Chilton Davis Varner
Georgia Bar No. 099987           Georgia Bar No. 725450
1148 Washington Street            W. Randall Bassett
P. O. Box 29                         Georgia Bar No. 041525
Covington, Georgia 30015        191 Peachtree Street
(770) 786-8123                     Atlanta, Georgia 30303-1763
                                       (404) 572-4600

Counsel for Mock Pallet Company

                                       Counsel for CHEP USA

## EXHIBIT A

### NON-DISCLOSURE AGREEMENT

I, _____, hereby certify my understanding that Discovery Materials that contain Confidential Material are being provided to me pursuant to the terms and restrictions of a Stipulation and Protective Order in CHEP USA v. Mock Pallet Company, United States District Court Northern District of Georgia, Case No. 02-CV-2053-BBM.

I further certify that I have been provided a copy of and have read the Stipulation and Protective Order, and I agree to comply with and be bound by its terms and conditions. I also consent to the jurisdiction of the Court for the purposes of enforcing the Stipulation and Protective Order. I understand that violation of the Stipulation and Protective Order is punishable by contempt of court.

Date: _____    Signature: _____

Sworn to before me and subscribed in my presence this _____ day of

_____, 200___.


_____
Notary Public

My Commission expires: _____