IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York partnership,  )
                                    )
      Plaintiff,                    )
                                    )        CIVIL ACTION
                                    )        NO. 02-CV-2053-BBM
vs.                                 )
                                    )
MOCK PALLET COMPANY,                )
a Georgia Corporation               )
                                    )
      Defendant.                    )

MOCK'S MEMORANDUM OF LAW IN RESPONSE TO
CHEP USA'S MOTION TO COMPEL

I. BACKGROUND

CHEP USA brought suit against Mock Pallet Company of Covington, Georgia alleging that Mock is "currently holding approximately 5,000 CHEP pallets at its Covington location (Complaint, Par. 15, emphasis supplied). CHEP further asserts that "Mock refuses to return the CHEP pallets in its possession to CHEP." (Complaint, Par. 19, emphasis supplied). CHEP also claims that "Mock has no right or claim of ownership to the CHEP pallets in its possession" (Complaint, Par. 21, emphasis supplied). CHEP states that "by refusing to surrender the CHEP pallets in its possession, Mock has converted the CHEP pallets to its own use" (Complaint, Par. 27, emphasis supplied).

Mock has denied the demands of CHEP. It asserts that CHEP has abandoned these pallets. It further contends that any CHEP marked pallet in its possession was acquired through no fault of Mock, that they were acquired in the ordinary course of business and that CHEP, has no absolute right to assert ownership of pallets that leak out of the system, especially those

1

pallets for which CHEP has been reimbursed by the assessment of the fee in lieu of the pallet, which is part of the consideration given to CHEP USA by the signatories of its agreements. Mock further asserts that under these circumstances it has become the owner of these pallets and has the right to exercise dominion and control over such stray and abandoned CHEP-marked pallets.

Since CHEP-marked pallets are indistinguishable from one another, CHEP does not require that the specific CHEP marked pallet be returned. Instead, CHEP's contracts require that any CHEP marked pallet may be returned. Thus, CHEP delivers pallets into circulation without a reasonable expectation that the specific pallet being placed into circulation will be returned to it. Rather, a distributor is permitted to return to CHEP either the original pallet it received, another CHEP marked pallet, or monetary compensation.

As such, CHEP's placement of its pallets into circulation in the State of Georgia constitutes a sale of the goods, rather than a lease or bailment of its pallets, and pallets that are delivered to Mock pass to it as an ordinary sale or exchange.

Through CHEP's unwillingness or inability to control leaks in the distribution chain, pallets have passed into the possession of any number of entities, including recycling companies. Due to CHEP's negligence, their intentional actions, and/or their ratification of the fact that 20% of their pallets (which they claim number in the hundreds of millions) are "leaked from the pool", CHEP has no knowledge as to these pallets location.

This occurs because CHEP's users often do not comply with the contractual provisions established between CHEP and the CHEP's customers. Through inadvertence, neglect or disregard of the contractual provisions established between CHEP and the CHEP pallet user,

numerous CHEP-marked pallets exit out of the system and end up in the possession of parties who do not contract with CHEP.

Although CHEP's contract provides that in case of failure to return the pallets, the holder will be assessed a penalty, often time, CHEP chooses not to enforce these provisions. Thus, millions of pallets end up in possession of recyclers, such as Mock, who have no agreement with CHEP.

CHEP has an Accelerated Volume Program that allows contracted manufacturers for an extra charge to ship CHEP-marked pallets to Non-Participating Distributors, i.e. anyone. The Non-Participating Distributors need not have agreed to the conditions CHEP USA sets forth in its Complaint. Thus, contrary to its allegations that it has a closed loop system it intentionally maintains an "open system" with great numbers of CHEP-marked pallets leaking into the marketplace and into the possession of recyclers such as Mock.

CHEP alleges in its Complaint that its pallet "rental" system is a "one-way system", with the Participating Distributors returning the pallets to CHEP depots at the distributor's cost. (Complaint, Par. 8). As noted above, the Non-Participating Distributors who are now numerous, have no such obligations and hence the stream of commerce is flooded with tens of millions of stray and abandoned CHEP-marked pallets.

CHEP claims that it takes a number of affirmative steps to protect its ownership interest in its pallets. However, as evidenced by this case, where it claims Mock has 5,000 CHEP-marked pallets (it now asserts in this Motion, the number has risen to 40,000), it is totally clueless as to what happens to these abandoned pallets.

To illuminate this point, one needs only to look to Mock's Request to Produce No. 22 and CHEP USA's response:

3

All documents constituting, referring or relating to:

a.  Any distributor, manufacturer or other entity from whom CHEP alleges Mock has received pallets containing CHEP's markings;

b.  Mock's receipt of such pallets;

c.  Any communications CHEP has had with each such entity concerning its shipment of pallets to Mock, the amount of compensation CHEP has received or demanded from each such entity for pallets shipped to Mock and the individuals at each such entity with who CHEP has communicated orally or in writing concerning the entities obligations to CHEP or obligations not to ship pallets to Mock;

d.  The identity of the pallets in Mock's possession that were received by Mock from non-participating distributors;

e.  Any tracking information CHEP has in its possession, custody and control concerning any pallet it claims is in Mock's possession;

f.  Any sources of information upon which CHEP bases its allegations against Mock;

g.  Any communication CHEP has had with Mock concerning such pallets;

h.  Any identifying information CHEP claims is contained on each such pallet other than the color it is painted and its marking with CHEP's logo; and

i.  Any occasion any employee, agent or representative of CHEP has entered property owned by Mock.

CHEP objected on the grounds of relevancy as obviously it is clueless as to how many pallets Mock had in its possession at the time this suit was instituted, and it was further clueless as to how these pallets came into Mock's possession. In fact, in this Motion it is now alleging conversion of approximately 35,000 to 40,000 pallets. The subject pallets contain no identifying

mechanism such as a serial number and CHEP does not track these abandoned pallets especially when they are sold to Non-Participating Distributors, who have no obligation to CHEP to return them.

## II. THE DEFECTIVE REQUEST TO PRODUCE AND MOCK'S TIMELY RESPONSE

CHEP filed a Rule 34 Request for Production of Documents, which failed to specify "a reasonable time, place and manner of making the inspection and performing its related acts" as required by the Rule. Mock timely responded to this request and produced certain documents, (unlike CHEP, which to date has not produced a single document, as it objected to every single request for production and interrogatory posited by Mock.)

Mock initially objected to CHEP's discovery items that are the subject of this Motion to Compel that they were trade secrets that were closely guarded by Mock and that if an appropriate Protective Order was agreed upon (for outside counsel only as CHEP has agreed to in the Buckeye litigation in Ohio) Mock would respond to this flawed (absent a place and time to respond as mandated by Rule 34) Request for Production. Mock did not intend to waive any right to further objection. In fact in a letter that Butt wrote to Bassett (Exhibit "A") the case of Cahela v. James D. Bernard, D.O., P.C., 155 F.R.D. 221 (N.D. Ga. 1994) authored by Judge Carnes, was cited to CHEP for the proposition that a waiver of right to object only applies when the resisting party fails to answer the discovery at all. See also Jayne H. Lee Inc. v. Flagstaff Industries, 173 F.R.D. 651 at 657 (D.M.d 1997) cited by CHEP on page 17 of its brief, which involves a total failure to respond to discovery. See also Perez v. Golub 74 F.R.D. 360 (N.D. Ala. 1976) (cited by CHEP, which is also a total failure to produce documents case).

Before an agreement on an appropriate Protective Order, and before negotiations began on settling the discovery disputes, Mock filed a supplemental response alleging in addition to its

fear that it would be squashed by this billion dollar company if this customer list was divulged, that since this is a claim for conversion of approximately 5,000 pallets in its possession, Requests for Documents revealing to whom Mock transferred its pallets were irrelevant. The Complaint is strictly limited to pallets in Mock's possession, not to any pallets that it may have transferred. (Complaint, Par. 15-27). Furthermore, conversion is an act of dominion over the personal property of another inconsistent with his rights. Thus, where Mock acquires this property is irrelevant since for Plaintiff to make a prima facie case of conversion, it must first show proof of title to the property in the Plaintiff. Thus, either it owns the identifiable pallets or it doesn't. See Prince Heaton Enterprises v. Buffalo's Franchise, 117 F. Supp. 2d 1357, at 1365 (2000). See also, Lovinger v. Hix Green Buick Company, 110 Ga. App. 698, at 699, 700 (140 S.E. 2d 83) (1964); Miller & Miller v. Wilson, 98 Ga. 567, at 569 (25 SE 578)(1896) (the relevant question is whether or not Plaintiff has proof of legal title to specific tangible property, and not fungible items).

CHEP has abandoned the subject pallets in this case. This abandonment is further evidenced by the fact that Mock has had some of the subject pallets for over four years before CHEP ever filed this action.

Mock also asserts that assuming arguendo that CHEP retains any ownership interest in these pallets, which as stated above, Mock denies. Mock would be entitled to monetary compensation pursuant to a claim for unjust enrichment, as set forth in its Answer and Counterclaim. CHEP evidently must be conceding this point as recently they have instituted an asset recovery plan where they agree to pay recyclers for returning CHEP-marked pallets.

A.   PLAINTIFF'S REQUEST FOR INSPECTION OF
MOCK'S PREMISES

To date, CHEP has not made a valid request to inspect Mock's property. Request No. 43 (the rest of CHEP's Request for Production fails to specify a time and a place for the production) does not specify a time for said production. Mock objected accordingly.

Mock began negotiations with CHEP over such an inspection and based on its fear that this was just another means of having a CHEP representative come on its premises and discover its customers list, made the following proposal detailed in the January 28, 2003 letter from Butt to Bassett, attached as Exhibit "A".

Therein, Mock did not object to an inspection of the premises provided the following conditions are met:

1.  The inspection is limited to those acres of Mock where it separates out the CHEP-marked pallets;

2.  The inspection is limited to you and any other attorney who has signed the pleadings in this case, as Mock is fearful that bringing a CHEP employee would run the risk of him learning Mock's customers;

3.  The protective order Mock proposed is signed by Judge Martin;

4.  The inspection takes place after 5:00 p.m.;

5.  No pictures are to be taken.

Thus, any inspection should be done under the guidelines and since it has been recently discovered that CHEP is dealing in white pallets too, Mock should be allowed to inspect CHEP's depot. (See Affidavit of Mock, attached hereto as Exhibit "B").

B.  INTERROGATORY NO. 5 AND REQUEST TO PRODUCE NOS. 26 AND 27 RELATING TO INFORMATION ABOUT ANY TRANSFER BY MOCK OF CHEP-MARKED PALLETS.

CHEP should not be entitled to information regarding any transfer of CHEP-marked pallets to others (see Interrogatory No. 5 and Request to Produce 26 and 27).

Firstly as Judge Carnes stated in Cahela v. James D. Bernard, D.O. P.C., 155 F.R.D. 221, at 227 (N.D. Ga. 1994), the Court declines to accept [CHEP's ] argument that [Mock] is "limited to the objection they made prior to the expiration of the time to respond to Plaintiff's First Interrogatories. In each of the cited cases, the party to whom the interrogatories were propounded completely failed to respond or object to such interrogatories within the time allowed to answer. Herein, like in Cahela, "defendant did respond and object to [the interrogatories request to produce] within the time prescribed by Fed. R. Cir. P. 33(a) and [34]. Moreover, upon realizing the insufficiency of their original objection, [Mock] promptly supplemented [its] response . . . with a valid objection. Thus, the Court concludes that [Mock's] supplemental objections are properly before the Court and [Mock] did not waive such objection by failing to include them in its first response." Cahela, supra at 227.

At bar, Mock supplemented its response prior to the conference between counsel as to the discovery disputes and prior to CHEP's filing this Motion to Compel.

Evidence of any transfer of pallets by Mock to a third party is clearly irrelevant since by definition any pallets that were transferred by Mock prior to this litigation cannot be part of CHEP's conversion claim which specifically pleads the conversion of approximately 5,000 pallets in Mock's possession in Covington, Georgia.

Thus, at the very least the requested discovery is of such "marginal relevance that potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery." Chavez v. Daimler Chrysler Corp., 206 F.R.D. 615 (S.D. Ind. 2002).

8

III.   INTERROGATORY NO. 4 AND REQUESTS 25, 26 AND 27 RELATING TO MOCK'S
RECEIPT OF CHEP-MARKED PALLETS.

As stated above, pursuant to <u>Cahela</u>, Mock has not waived the relevancy objection.

Mock contends that production of Mock's confidential customer list is of marginal
relevance. This position is bolstered by CHEP's theory of the case expressed in its objection to
Defendant's Interrogatory No. 4. Therein CHEP states that learning of individuals who have not
returned the CHEP-marked pallets is irrelevant. However, every CHEP-marked pallet that Mock
has acquired is from an individual or an entity who failed to return the millions of stray and
abandoned CHEP-marked pallets in the stream of commerce in the USA and the world. Despite
the objection, CHEP now claims that Title II, Article 2A of the Official Code of Georgia control
this case and what is dispositive is what title a buyer takes in CHEP's "leased" goods. Yet,
CHEP maintains that evidence of transactions with their initial customers is irrelevant to the
question of ownership.

CHEP, in this case has sued for the conversion of approximately 5,000 CHEP-marked
pallets. To make its inquiries relevant to the allegations in its Complaint in this case, it should be
required to identify each pallet as set forth below if Mock could even begin to attempt to supply
it information as to how and from whom it acquired them. This is crucial since Mock Pallet
Company "did not keep records of the receipt of these CHEP-marked pallets, nor does it have
records prior to the commencement of this litigation of how many, if any, CHEP-marked pallets
were given [tractor-trailer] load" (Affidavit, Mock, in Response to Motion for Protective Order,
Par.11).

Furthermore, the key to the ownership question for the purpose of a conversion case is
not after the pallets have passed through several hands and Mock acquires it in the ordinary

9

course of its business sight unseen, interspersed with white pallets, but at the time a specific pallet is transported to the Non-Participating Distributors who have no obligation to return them, or sale to a customer occurs, or the pallet is simply abandoned.

Rule 26(b)(1) focuses discovery on actual claims and defenses at issue. The focus of the ownership question should be at the time the pallet leaves CHEP's possession and it should focus on CHEP's relinquishment of ownership at that point.

In the event, this Court should require a response to Interrogatories and Requests 25, 26 and 27 it should be : 1) subject to an appropriate protective order and limited to outside attorneys eyes only; and 2) limited to the approximately 5,000 CHEP-marked pallets in Mock's possession, which is the subject of this suit. Furthermore, at a minimum CHEP should be required to state with a modicum of specificity which pallet it is seeking information on. For example, it should be required to specify whether specific pallet in question had come from a Non-Participating Distribution with no obligation to return the pallets to CHEP or whether CHEP had already been paid money in the nature of a penalty for the pallet. See Hill v. Motel 6, 205 F.R.D. 490, at 492 (S.D. Ohio 2001).

<div align="center">CONCLUSION</div>

As a result of the foregoing, CHEP USA's Motion to Compel Discovery should be denied in its entirety.

This _22 ᵗʰ_ day of February, 2003.

BALLARD, STEPHENSON & WATERS, LLP
Attorneys for Defendant

By: _Eugene D. Butt_
Eugene D. Butt
Georgia Bar No. 099987

<div align="center">10</div>

1148 Washington Street
P. O. Box 29
Covington, Georgia 30015
(770) 786-8123

**Ballaf  Stephenson & Waters, L( .P.**
A Professional Limited Liability Partnership

**EXHIBIT**
**A**

C.C. King, Sr. (1903-1963)
Donald G. Stephenson (1934-2002)
W. D. Ballard
W. Michael Waters
Eugene D. Butt

1148 Washington Street
Post Office Box 29
Covington, Georgia 30015
Telephone: 770-786-8123
Facsimile: 770-786-8127
BSWLaw@mindspring.com

January 28, 2003

W. Randall Bassett
King & Spalding
191 Peachtree Street
Atlanta, Georgia 30303-1763

RE:   CHEP USA v. Mock Pallet Company

Dear Randy:

This letter will respond to your letter dated January 17, 2003, and January 21, 2003 and to serve as a good faith effort to try to reach a compromise and to express the views and concerns of Mock Pallet Company regarding the Discovery disputes that have arisen in this case.

A. Mock's "Other Responses to Discovery"

1. Mock is copying the photos identified and I will make them available for inspection within a week.
2. With regard to Interrogatory No. 6, Mock also identifies Nancy Mock, Tim Mock, Emily Jenkins and David Mock as people who may have witnessed any meetings with CHEP representatives.
3. With regard to Interrogatory No. 14, Mock made a visual count of CHEP-marked pallets in September, 2001 and counted approximately 28,000 pallets. Before September, 2001, Mock did not keep track of the number of CHEP-marked pallets. On an occasion a Mock employee told a representative of CHEP that there were at least 5,000 CHEP-marked pallets owned and possessed by Mock Pallet Company in Covington, Georgia.
4. Mock did respond to request No. 31. It just made a typo thereon and erroneously wrote No. 32. I trust you will accept the above answers in lieu of a more formal response. If not please notify me immediately.
5. Mock agrees that the parties need a sixty (60) day extension of discovery.
6. I am also enclosing a 30(b)6 Notice. Please feel free to reschedule if the date does not suit you or CHEP. I included the date so that the Notice would make sense.

Randy Bassett
January 28, 2003
Page 2

### B. Chep's Inspection of Mock's Premises

Mock does not object to an inspection of the premises provided the following conditions are met:

1. The inspection is limited to those acres of Mock where it separates out the Chep-marked pallets;
2. The inspection is limited to you and any other attorney who has signed the pleadings in this case, as Mock is fearful that bringing a Chep employee would run the risk of him learning Mock's customers.
3. The protective order Mock proposed is signed by Judge Martin.
4. The inspection takes place after 5:00 p.m.
5. No pictures are to be taken

### C. The Proposed Protective Order

I sent you an appropriate protective order. My client is petrified that the more people who would have access to his highly secret customer list, (especially CHEP employees or lawyers outside the State of Georgia, who view the discovery) the greater the danger that their trade secrets will be divulged and that Mock Pallet Co. will be squashed by your multi-billion dollar client, who in the past has gone to such extreme steps as having an innocent man, such as Edgar Lozano arrested. As stated in our objections, and below, Mock's customers are irrelevant to your claims of conversion. This argument is even more compelling in the face of Chep's contention, that despite the fact that Chep has operational and structural problems, which leads to millions of Chep-marked pallets not being returned to it, and despite CHEP charging a liquidated fee in the nature of a penalty (but doesn't require the identical pallet returned), that what happens to the CHEP-marked pallet when it is initially sold or transferred is irrelevant to the question of ownership. This information is most relevant, especially since these pallets are often sent to "Non-Participating Distributors" who have no obligation to return the pallet to CHEP or any liability if the pallet is lost. You must remember that Mock claims CHEP USA does not own these pallets and that CHEP, through its actions of omission or commission, has abandoned the pallets. Mock also contends that CHEP has ratified by their loss of control of the pallet pool and serious leakage problems in the millions that they do not own the subject CHEP-marked pallets. Thus, these matters should be discoverable.

### D. Mock's objections are timely and properly before the Court

Judge Carnes ruled that one waives its right to object only when the party completely fails to respond or object during the allocated time. Thus, Defendant's supplemental interrogatories (which were additive to the trade secret objection) should be

Randy Basset
January 28, 2003
Page 3

properly before the Court, as the initial objections and responses were timely made. See Cahela v. Bernard, 155 FRD 221, at 227 (N.D. Ga. 1994) (Carnes, J.)

> E. Mock's objections to Interrogatories 4, 7, 8, 9, 10 and
> Request 8, 11, 25, 26 and 27 based on relevancy.

While CHEP maintains that it is acting in "good faith" in resolving the discovery disputes, one must wonder why it remains adamant in refusing to turn over Mock's request for copies of contracts with any entity regarding CHEP pallets that "might reasonably be anticipated to be shipped, used, located, possessed or stored in the State of Georgia. If as you claim, this is irrelevant, then there is nothing pertaining to the distribution of the CHEP-marked pallets that is relevant, either upstream or downstream.

Since CHEP-marked pallets are indistinguishable from one another, as they do not contain a means of individual identification, your willingness to turn over documents only pertaining to entities Mock does business with (far downstream) will amount to your turning over nothing, since it would be next to impossible to trace these fungible Chep-marked pallets up the distribution chain.

As Credit Suisse First Boston writes in a research report dated February 27, 2002 at page 14, "Leakage of the pool to NPDs"- in launching the Accelerated Volume Program (AVP) in 1997, CHEP didn't appear to ensure that it had the necessary controls and sales representatives to 1) prevent Manufacturers from sending pallets to NPDs; and/or 2) follow the pallets and product downstream and then signing up the NPDs. This has resulted in an estimated 20% of the pallet pool being sent to NPDs, distributors who have don't have a contract with CHEP, and hence comply with the care of the assets. "Ramifications" – There are several ramifications including: i) reduced asset turns; ii) increased damage rate; iii) increase in lost pallets; iv) greater collection and transport costs; v) "Black Market" pallet pool; vi) litigation; and vii) the dilution of value incorporated in the Participating Distributor Agreement.

Thus, it is well documented that Chep has structural and operational difficulties in keeping track of these CHEP-marked pallets, and that up to 20% of the pallets it sells, leases or transfers to others are not retuned to it. Thus, evidence of the requested contracts and the amount of liquidated penalties CHEP charges these entities is relevant to the issue of abandonment, which can be accomplished either by omission or commission. Walden v. Jones, 252 Ga. App. 692 (556 SE 2d 566)(2001).

With regard to your request that Mock turn over any information regarding Chep-marked pallets that it might have transferred, not only would this divulge highly sensitive trade secrets, but it would also be irrelevant to your alleged conversion claim, as Chep

Randy Basset
January 28, 2003
Page 4

has only made a demand for the pallets which Mock owns and which they possess in
Covington, Georgia. See <u>Cotton v. Pendley</u>, 130 Ga. App. 552 (1974).

Moreover, with regard to your request for the names of the entities from whom
Mock acquires its pallets, what knowledge Mock had at the time it acquired the Chep-
marked pallets in the ordinary course of its business or what the mind set of these
bona fide purchasers, who conveyed these pallets would be irrelevant in any claim for
conversion. See <u>Lovinger v. Hix</u> <u>Green Buick Co.</u>, 110 Ga. App. 699, at 701 (1964). It is
CHEP's burden to prove legal title in this case, and therefore what is relevant is whether
CHEP owned the subject pallets prior to Mock's acquisition. Consequently, and to
reiterate Mock's position, the identity of the entities who first receive any CHEP-marked
pallets is quite relevant and should be discoverable.

## F. CHEP's Objections

I discussed in my January 15 letter, why I think that the various requests were
discoverable.

Without reiterating the entire letter, it is apparent to Mock that since ownership of
the subject pallets are the *sine qua non* to CHEP's conversion claim, and since CHEP
cannot specifically identify by serial number or any other mechanism the source of origin
of any specific pallet, the most significant piece of the ownership puzzle would be the
arrangements CHEP has with the entities that are at the top of their distribution scheme.
Mock should not be required to trust CHEP characterization of their arrangement with
these entities, nor CHEP's promise that once they learn Mock's client list, they will be
able to trace with certainty the manufacturers or distributors who they transferred the
pallets to initially. Given CHEP's well documented problems, one must be skeptical of
their capability to accomplish this task. Furthermore, given the adversarial nature of the
litigation process, one would not expect Mock to be compelled to trust CHEP implicitly
without any means of verification.

Furthermore, with regard to Interrogatory No. 8, I detailed above in quoting from
the Credit Suisse report why information about these who ship pallets to non-
participating pallets is relevant as they highlight the claim that the subject pallets and
millions of other CHEP-marked pallets have been abandoned due to the serious "leakage"
problem that CHEP suffers from.

Furthermore, Requests No. 30 and 29 are relevant and not privileged. Request No.
26 is relevant as it goes to the liquidated penalty charged by CHEP which would then
turn any transfer into a sale under the UCC and pertinent case law. See <u>Carter v. Tokai</u>
<u>Financial Services, Inc.</u>, 231 Ga. App. 755, at 756-757 (1)(500 SE 2d 638)(1998).

Randy Basset
January 28, 2003
Page 5

Accordingly, it would seem that we have reached an impasse, and it would be best left for Judge Martin to decide these discovery disputes as well as the ownership issue as soon as possible.

Very Truly Yours,

Eugene D. Butt

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHEP USA, a New York partnership, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| | ) NO. 02-CV-2053-BBM |
| vs. | ) |
| | ) |
| MOCK PALLET COMPANY, | ) |
| a Georgia Corporation | ) |
| | ) |
| Defendant. | ) |

## AFFIDAVIT

Appearing before me, the undersigned Ricky Mock, President of Mock Pallet Company testifies as follows:

1.

My name is Ricky Mock. I am over eighteen years old and am competent to give this affidavit. It is based on my personal knowledge and I understand it is to be used in Mock Pallet Company's opposition to CHEP USA's Motion to Compel.

2.

Mock Pallet Company is in the business of recycling and/or repairing wooden pallets for resale. Wooden pallets are used on platforms on which goods, such as groceries are shipped.

3.

Any inspection of Mock Pallet Company's premises should be limited as set forth in Gene Butt's letter to Randy Bassett of January 28, 2003, because having an employee of CHEP came on to Mock Pallet Company's premises at any time runs the risk of them learning who Mock's customers are. This information could be obtained by a CHEP employee: a) observing

the patterns of the wooden pallets that are on the premises, the trucks or trailers that are unloading, etc.; b) a customer's name on the pallets; c) a customer's truck or trailer on the premises; or d) communicating by any employees, vendors or customers that are on the premises at that time.

Thus, in light of the risk of exposing this very sensitive, confidential and closely guarded secrets, I submit that restrictions imposed in that letter for the inspection are reasonable and necessary.

_____
Ricky Mock
President, Mock Pallet Company

Sworn to and subscribed before me
this 25th day of February 2003.

_____
Notary Public

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York partnership,       )
                                        )
        Plaintiff,                      )
                                        )        CIVIL ACTION
                                        )        NO. 02-CV-2053-BBM
vs.                                     )
                                        )
MOCK PALLET COMPANY,                    )
a Georgia Corporation                   )
                                        )
        Defendant.                      )

## CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B

I hereby certify that the foregoing MEMORANDUM OF LAW IN RESPONSE TO CHEP USA'S MOTION TO COMPEL have been computer processed with 12 point Times New Roman font in compliance with N.D.G.A. Local Rule 5.1B.

This _27ᵗʰ_ day of February, 2003.

BALLARD, STEPHENSON & WATERS, LLP
Attorneys for Defendant

By: _____
        Eugene D. Butt
        Georgia Bar No. 099987

1148 Washington Street
P. O. Box 29
Covington, Georgia 30015
(770) 786-8123

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEP USA, a New York partnership,     )
                                       )
        Plaintiff,                     )     Civil Action File
                                       )     No. 02-CV-2053
vs.                                    )
                                       )
MOCK PALLET COMPANY,                   )
a Georgia Corporation                  )
                                       )
        Defendant.                     )
                                       )

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing MEMORANDUM

OF LAW IN RESPONSE TO CHEP USA'S MOTION TO COMPEL upon counsel by

depositing a copy of same in the United States Mail in a properly addressed envelope with

adequate postage thereon to:

> KING & SPALDING
> Chilton Davis Varner
> W. Randall Bassett
> 191 Peachtree Street
> Atlanta, Georgia 30303-1763

This _27ᵗ__ day of February, 2003.

_Eugene D. Butt_
Eugene D. Butt
Attorney for Plaintiff
Georgia Bar No. 099987

Ballard, Stephenson & Waters, L.L.P.
1148 Washington Street
P.O. Box 29
Covington, Georgia 30015
770-786-8123