RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN 1 3 2003

LUTHER D. THOMAS, Clerk
By: J. [illegible] Deputy Clerk

ORIGINAL

FILED IN CLERK'S [OFFICE]

JUL 2 2003

[illegible], Clerk
By: [illegible] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHEP USA, a New York Partnership, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Mock PALLET COMPANY, ) <br> a Georgia Corporation, ) <br> ) <br> Defendant. ) | Case No. 02-CV-2053-BBM |

## AMENDED COMPLAINT

Plaintiff, CHEP USA ("CHEP"), respectfully shows the Court the following:

### PARTIES, JURISDICTION, AND VENUE

1.  CHEP is a general partnership organized under the laws of the state of New York, with its principal place of business in Orlando, Florida. CHEP is engaged in the business of leasing wooden pallets to manufacturers for use in the transportation of goods.

2.  Defendant, Mock Pallet Company ("Mock"), is a corporation organized under the laws of the state of Georgia and does business in Covington, Georgia. Mock is subject to the jurisdiction of this Court and may be served through its registered agent, W.D. Ballard, at 1148 Washington Street, Covington, Georgia,

53

30015. Upon information and belief, Mock is engaged in the business of, among other things, recycling and reselling used shipping pallets.

3. This dispute arises between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Therefore, this Court has diversity-of-citizenship jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) and (c).

## FACTUAL BACKGROUND

### A. <u>CHEP's Operations</u>

5. CHEP is the world's leading pooler of wooden pallets. At any given time, CHEP has tens of millions of pallets in circulation in its pool rental system in the United States.

6. CHEP pallets are never sold, and CHEP retains ownership of its pallets at all times.

7. CHEP pallets may only be recycled, repaired, or destroyed by authorized CHEP representatives.

8. The CHEP pallet pool rental system is a "one-way" system. Empty CHEP pallets flow from CHEP depots to participating manufacturers, who ship commercial goods and products on the CHEP pallets to participating distributors.

After the pallets have been used, the participating distributors return the pallets to CHEP depots, at the distributor's cost.

9. CHEP takes a number of affirmative steps to protect its ownership interest in its pallets. For instance, CHEP's agreements with authorized manufacturers and distributors expressly provide that CHEP owns CHEP pallets and that those pallets may never be bought or sold. CHEP's ownership of its pallets is also described in all CHEP literature, which is provided to all participating manufacturers and distributors. It is also CHEP's practice to notify each non-participating distributor in writing that CHEP owns CHEP pallets, and that the non-participating distributor must surrender possession of CHEP pallets.

10. To further protect its ownership interests and to insure that its pallets are not confused with other pallets, CHEP places distinctive marks and labels on its pallets. For example, all four external sides of a CHEP pallet are painted bright blue. The two longer external sides of the pallet are also marked in white with the CHEP logo and the words: **PROPERTY OF CHEP.**

11. CHEP also protects its ownership interest in its pallets by mailing letters to all known businesses that distribute. and/or recycle wooden pallets stating that CHEP pallets (1) have been painted in the distinctive light blue color used by CHEP; and (2) are identified by a demarcation including the CHEP logo. These

letters also provide that the pallets (1) are "Owned by CHEP USA," (2) are the property of CHEP, and (3) should be returned to CHEP in the event that they come into the possession of one of these businesses.

## B. Mock's Actions

12. Mock receives and purchases used pallets from distributors and pallet vendors and either recycles those pallets or repairs or remanufactures those pallets for sale.

13. Mock is not an authorized user of CHEP pallets. Mock and CHEP have never had an agreement, written or otherwise, authorizing Mock to collect, receive, hold, use, repair, recycle, or destroy CHEP pallets.

14. Mock is in possession and control of a large number of CHEP pallets. Those pallets are being held at Mock's location at 175 Cook Road, Covington, Georgia.

15. Mock is currently holding approximately 45,000 to 50,000 CHEP pallets at its Covington location.

16. The current replacement cost for each of these pallets is approximately $20.00 per pallet. The revenue generated by each pallet based on its rental value within the pallet pool is currently approximately $11.18 per year.

17. Thus, the CHEP pallets at Mock's Covington location are individually worth approximately $1,000,000. Likewise, due to Mock's failure to return CHEP pallets

in its possession, CHEP has lost rental revenue of approximately $1,116,695.67 at present.

18.  CHEP has repeatedly demanded that Mock return all CHEP pallets in its possession to CHEP. Particularly, on September 24, 2001, CHEP's counsel sent a letter via Federal Express, demanding that Mock return all of the CHEP pallets in its possession to CHEP. A true and correct copy of this letter is attached hereto as Exhibit A.

19.  Mock refuses to return the CHEP pallets in its possession to CHEP.

20.  Mock has actual and constructive knowledge that CHEP pallets are owned by CHEP. Mock also has actual and constructive knowledge that CHEP pallets are not subject to sale or purchase. Mock has actual and constructive knowledge that Mock is not authorized to collect, receive, hold, use, repair, recycle, or destroy CHEP pallets.

21.  Mock has no right or claim to ownership of the CHEP pallets in its possession.

22.  Mock has no legitimate lien right or claim against the CHEP pallets in its possession.

23. Mock has not taken possession of CHEP pallets for a tax, assessment, or fine pursuant to a statute and has not seized CHEP pallets under an execution or attachment against the pallets.

24. In the course of its business, Mock will continue to receive, or have the opportunity to receive, and exercise control over CHEP pallets.

25. Mock, in fact, continues to receive 500 to 1,000 CHEP pallets per month.

26. Mock has communicated to representatives of CHEP that if Mock should receive any CHEP pallets in the future, Mock will refuse to surrender possession of such pallets.

27. Mock willfully takes and receives CHEP's pallets with a gross disregard for CHEP's rights in its pallets.

28. Upon information and belief, Mock destroys CHEP's pallets and uses the parts from CHEP pallets to build and/or repair other non-CHEP pallets.

29. Mock has taken CHEP pallets, painted over CHEP's proprietary markings and painted "MPC" (Mock Pallet Co.) on the pallet.

30. Since the initiation of this suit, Mock has purported to sell CHEP pallets in its possession to third parties.

## COUNT I (CONVERSION)

31. CHEP repeats and re-alleges the facts set forth in the preceding paragraphs, as though fully set forth in this paragraph.

32. By refusing to surrender the CHEP pallets in its possession, Mock has converted the CHEP pallets to its own use.

33. Mock has intentionally and wrongfully interfered with CHEP's possession of CHEP pallets.

34. Mock, after the initiation of this suit, continues to transfer CHEP pallets to third parties.

35. Pursuant to O.C.G.A. §§ 44-12-150 and 151, Mock's wrongful conduct constitutes conversion, and CHEP is entitled to receive possession of its pallets and the lost rental of all pallets in Mock's possession. See O.C.G.A. § 44-12-151(3). Further, CHEP is entitled to damages for all CHEP pallets sold by Mock.

## COUNT II (PERMANENT INJUNCTION)

36. CHEP repeats and realleges the facts set forth in the preceding paragraphs, as though fully set forth in this paragraph.

37. Mock has intentionally and wrongfully interfered with CHEP's possession of CHEP pallets.

38. In the course of its business, Mock will continue to receive or have the opportunity to receive and exercise control over CHEP pallets.

39. Mock has indicated that if it should receive any CHEP pallets in the future, Mock will refuse to surrender possession of such pallets.

40. CHEP has a reasonable and well-grounded fear that Mock will continue to interfere with CHEP's legal right to possession of its pallets.

41. Mock's interference with CHEP's legal right to possession of its pallets will result in actual and substantial injury to CHEP, including but not limited to the costs of the loss of use of, or damage to, CHEP pallets and the costs of recovering those pallets. Furthermore, other pallet dealers may believe that CHEP cannot enforce its ownership interest in its pallets and could begin acting in the same manner as Mock.

42. Based on the foregoing, CHEP is entitled to a permanent injunction against Mock requiring Mock to inform CHEP within 72 hours of receiving any CHEP pallets and requiring Mock to surrender possession immediately of any and all CHEP pallets to CHEP.

## COUNT III (PUNITIVE DAMAGES)

43. CHEP repeats and realleges the facts set forth in the preceding paragraphs, as though fully set forth in this paragraph.

44. O.C.G.A. § 51-12-5.1 allows for the recovery of punitive damages when "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

45. Mock's actions in this matter have shown, and continue to show, willful misconduct, wantonness, and an entire want of care with regard to CHEP's property rights.

46. It is obvious by Mock's transfer of CHEP's pallets to third parties - since the initiation of this lawsuit seeking the return of such property - that Mock has a decided, conscious indifference to the consequences of its actions.

## COUNT IV (EXPENSES OF LITIGATION)

47. CHEP repeats and re-alleges the facts set forth in the preceding paragraphs, as though fully set forth in this paragraph.

48. By refusing to return CHEP's pallets, Mock has been stubbornly litigious and has caused CHEP unnecessary trouble and expense. Consequently, CHEP is entitled to recover its expenses of litigation pursuant to O.C.G.A. §§ 9-15-14 and 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CHEP USA respectfully prays for the following relief:

(1) That the Court enter judgment in favor of CHEP on its claim for conversion and require Mock to return all CHEP pallets in Mock's possession to CHEP, undamaged, and that Mock be required to reimburse CHEP for the lost rental value of the CHEP pallets in its possession;

(2) That the Court enter judgment for the value of CHEP pallets that Mock has destroyed;

(3) That the Court enter judgment in favor of CHEP for the value of all CHEP pallets transferred by Mock to third parties;

(4) That the Court issue a permanent injunction requiring Mock to inform CHEP within 72 hours of receiving any CHEP pallets and requiring Mock to surrender immediately all CHEP pallets in the possession, custody, or control of Mock; and for such other relief as the Court deems just and equitable;

(5) That the Court award CHEP punitive damages;

(6) That the Court enter judgment in favor of CHEP awarding it expenses of litigation, including attorneys' fees in an amount to be proven at trial;

(7) That all costs be taxed against Mock; and

(8) That the Court award CHEP such other further relief as it deems just and necessary.

This 13th day of June, 2003.

Respectfully Submitted,

KING & SPALDING, LLP

_____
Chilton Davis Varner
Georgia Bar No. 725450
W. Randall Bassett
Georgia Bar No. 041525

Attorneys for CHEP USA

191 Peachtree Street
Atlanta, Georgia 30303-1763
(404) 572-4600

## CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B

I further certify that the foregoing AMENDED COMPLAINT has been computer processed with 14 point New Times Roman font in compliance with N.D.G.A. Local Rule 5.1B.

This _13th_ day of June, 2003.

*W. Randall Bassett*
W. Randall Bassett
Georgia Bar No. 041525
Attorney for CHEP USA

KING & SPALDING LLP
191 Peachtree Street, N.E.
Atlanta, Georgia 30303-1763
(404) 572-4600
(404) 572-5144

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHEP USA, a New York Partnership, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 02-CV-2053-BBM |
| v. | ) ) |
| Mock PALLET COMPANY, a Georgia Corporation, | ) ) ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF CHEP USA'S AMENDED COMPLAINT was served upon counsel for defendant by depositing same in the United States mail, with sufficient postage thereon to insure delivery, and addressed as follows:

> Eugene D. Butt, Esq.
> Ballard, Stephenson & Waters, LLP
> P.O. Box 29
> Covington, GA 30015.

This 13th day of June, 2003.

W. Randall Bassett
Georgia Bar No. 041525