# United States Court of Appeals
For the Eleventh Circuit

---

No. 04-13364

District Court Docket No.
02-02053-CV-BBM-1

CHEP USA,
a New York Partnership,

          Plaintiff-Counter-
          Defendant-Appellant,

versus

MOCK PALLET COMPANY,
a Georgia Corporation,

          Defendant-Counter-
          Claimant-Appellee.

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Jun 24, 2005
THOMAS K. KAHN
CLERK

---

No. 04-13518

District Court Docket No.
02-02053-CV-BBM-1

CHEP USA,
a New York Partnership,

          Plaintiff-Counter-
          Defendant-Appellee,

versus

MOCK PALLET COMPANY,
a Georgia Corporation,

          Defendant-Counter-
          Claimant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Georgia

---

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

      Entered: June 24, 2005
      For the Court: Thomas K. Kahn, Clerk
      By: Jackson, Jarvis

ISSUED AS MANDATE
SEP 2 3 2005
U.S. COURT OF APPEALS
ATLANTA, GA




[DO NOT PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

No. 04-13364

D. C. Docket No. 02-02053-CV-BBM-1

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 24, 2005
THOMAS K. KAHN
CLERK
```

CHEP USA,
a New York Partnership,

          Plaintiff-Counter-
          Defendant-Appellant,

versus

MOCK PALLET COMPANY,
a Georgia Corporation,

          Defendant-Counter-
          Claimant-Appellee.

No. 04-13518

D. C. Docket No. 02-02053-CV-BBM-1

CHEP USA,
a New York Partnership,

          Plaintiff-Counter-
          Defendant-Appellee,

versus

MOCK PALLET COMPANY,
a Georgia Corporation,

          Defendant-Counter-
          Claimant-Appellant.

Appeals from the United States District Court
for the Northern District of Georgia

**(June 24, 2005)**

Before ANDERSON, HULL and RONEY, Circuit Judges.

PER CURIAM:

CHEP, USA ("CHEP") leases pallets to companies that use them to ship goods. Although CHEP originally required its customers to ship the pallets to entities that had agreed in advance to return them to CHEP, starting in 1998 CHEP began allowing some of its customers, under certain conditions, to ship pallets to entities with which CHEP did not have contracts. These entities are known as Non-Participating Distributors ("NPD's"). Some NPD's have "sold" the pallets to pallet recyclers, including the defendant in this case, Mock Pallet Company ("MPC" or "Mock").[1] CHEP sued MPC to get back approximately 30,000 pallets, arguing that MPC's actions constituted conversion of CHEP property.[2] MPC counterclaimed, seeking a declaratory judgment that the pallets had been

---

[1] The district court has ably described CHEP's business models and we incorporate that description by reference.

[2] On appeal, both parties use the 30,000 figure. The district court, in its summary judgment order, states that MPC "now has approximately 40,000 to 50,000" CHEP-marked pallets. Summary Judgment Order at 6. We assume, without deciding, that the 30,000 figure is correct.

2

abandoned by CHEP and now belonged to MPC. Even if the court found that the pallets belonged to CHEP, MPC argued that it was entitled to reimbursement for handling and storage costs as a "naked depository" under Georgia law, or alternatively under the theory of unjust enrichment. On summary judgment, the district court ruled that the pallets belonged to CHEP, but that MPC was a naked depository.[3] The case went to trial on the question of how much MPC was entitled to, as a naked depository, for handling and storing CHEP's pallets. The district court interpreted the naked depository damages provisions to allow for reimbursement of the cost of reasonable hire rather than actual costs incurred. MPC presented evidence of both its actual costs and the costs of reasonable hire and won a verdict of $584,000.00. The district court also granted summary judgment to MPC for unjust enrichment, but dismissed this claim shortly before the damages trial because MPC could be "completely compensated pursuant to its claims as a naked depository."

After filing its motion for summary judgment, CHEP learned that MPC had sold 1,200 CHEP-marked pallets to third parties. CHEP amended its complaint to add a claim for conversion regarding these sales separate from its general

---

[3] The district court rejected MPC's ownership claim in part because it held that MPC was not a "bona fide" or "good faith" "purchaser for value" under Georgia law.

conversion claim regarding the much larger number of pallets still in MPC's possession. Although the district court rejected CHEP's claim for conversion with respect to the bulk of the pallets, its general conversion claim, the district court did hold that MPC had converted the 1,200 pallets which it sold, but the district court also held that this specific conversion claim was barred by the four-year statute of limitations. CHEP also moved for an injunction requiring MPC to contact CHEP within 7 hours after MPC came into possession of CHEP-marked pallets and requiring MPC to surrender such pallets to CHEP. The district court denied this motion. Following the jury verdict, the district court denied CHEP's motion for judgment as a matter of law or, in the alternative, a new trial or remitittur.

CHEP appeals the adverse rulings mentioned above, as well as the jury award. On appeal, MPC does not contest the district court's determination that the pallets belong to CHEP. Rather, MPC seeks to uphold the district court's determination that MPC is a naked depository, its decision regarding the statute of limitations on the claim for the 1,200 pallets, and the jury's damages award. In the event that this Court overturns the district court's ruling in MPC's favor on the naked depository claim, MPC cross appeals the district court's dismissal of the unjust enrichment claim.

In Part I.A, we address CHEP's general conversion claim. In Part I.B, we

address MPC's claim that it is a naked depository. In Part I.C, we address MPC's alternative claim pursuant to the theory of unjust enrichment. In Part I.D, we set out the appropriate measure of recovery under the unjust enrichment theory. In Part I.E, we set out the appropriate measure of recovery under the naked depository theory. In Part I.F, we address CHEP's specific conversion claim with respect to the 1,200 pallets MPC sold and the statute of limitations in that regard.

## I. DISCUSSION

### A. Conversion

We affirm the district court's grant of summary judgment in favor of MPC on CHEP's general conversion claim.[4] Conversion is defined in Georgia as "an unauthorized assumption and exercise of the right of ownership over personal property of another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." Tidwell v. Tidwell, 251 Ga.App. 863, 864-65 (2001) (citations omitted). A plaintiff establishes a cause of action for conversion by showing "(1) title to the property or the right of possession, (2) actual possession in the other party, (3)

---

[4] As already discussed, there are two "conversion" claims involved in this appeal. The first is CHEP's claim that MPC's refusal to return all 30,000 pallets on demand constitutes conversion, the general conversion claim. The second is CHEP's claim that MPC converted the 1,200 blue pallets it sold to third parties. Unless otherwise noted, our discussion of CHEP's "conversion claim" refers to the first, more general claim; in particular, our discussion in this Part I.A relates only to the 30,000 pallets, and not to the 1,200 which were sold.

demand for the return of the property, and (4) refusal by the other party to return the property." Johnson v. First Union Nat'l Bank, 255 Ga. App. 819, 823 (2002).

The district court rejected CHEP's conversion claim on grounds that "MPC was a naked depository of CHEP marked pallets, having lawfully acquired such pallets by virtue of CHEP's permissive release thereof to entities with whom it has no contractual relationship, and was therefore entitled to retain possession of the deposit until . . . [all] charges and expenses [incurred] by reason of the deposit are paid."

We agree with the district court that a valid claim to be a naked depository (which would give MPC a lien on the pallets pending reimbursement) would defeat CHEP's conversion claim. We think a meritorious unjust enrichment claim would have the same effect. As in the case of a naked depository, we think that refusal to turn the pallets over without reasonable payment would not be wrongful where the result would be unjust enrichment of the pallets' owner.

As we discuss below, there is a genuine issue of fact as to whether MPC was a naked depository, but if the fact finder finds MPC is not a naked depository, then MPC is nevertheless entitled to recover from CHEP pursuant to its unjust enrichment. For these reasons, CHEP's general conversion claim fails as a matter of law, and the district court's summary judgment against CHEP is affirmed in this

regard.

B. <u>Naked Depository</u>

There is a material factual dispute regarding whether MPC stored CHEP's pallets "gratuitously" or for its own benefit. As a result, summary judgment on the naked depository issue was improper.

First, we review the relevant statutes. O.C.G.A. §44-12-90 provides the following definitions:

> (1) "Deposit" means the delivery of chattels by one person to another to keep for use of the bailor.
>
> (2) "Depository for hire" means a depository who receives or expects a reward or hire for undertaking to keep chattels for another.
>
> (3) "Naked deposit" means an undertaking whereby a depository keeps chattels for another gratuitously.

O.C.G.A. §44-12-96 states:

> One who holds a naked deposit is entitled to be reimbursed for all charges and expenses which he incurs by reason of the deposit, and he may retain possession of the deposit until such charges and expenses are paid.

O.C.G.A. §44-14-410 states:

> [I]nvoluntary, gratuitous, or naked depositories shall have a lien on the property in their possession for any expense incurred in caring for the property and any expenses incurred in the effort to locate the owner thereof. . . . Where the owner and his address are known, the depository is authorized, but is not required, to address a notice by

7

registered or certified mail to the owner notifying him that the depository holds the property and that the property will be delivered to the owner upon reasonable identification and payment of any charges that have accrued in caring for the property and in giving such notice.

Under O.C.G.A. §44-12-91, "[f]or a naked deposit, the depository is responsible only for gross negligence." Under O.C.G.A. §44-12-92, "[d]epositories for hire are bound to exercise ordinary care and diligence and are liable as in other cases of bailment for hire."

CHEP argues that MPC cannot meet the requirements of a naked depository because MPC did not transport, sort and store CHEP pallets for CHEP's benefit but rather claimed ownership of the pallets throughout the time it transported, sorted and stored CHEP pallets and throughout the course of the instant litigation. As a fallback position, CHEP contends that there is a material factual dispute in this regard. We conclude that there is a material issue of fact.

It is clear from the definition of a naked deposit that it is an undertaking to keep property "for another."[5] Thus, CHEP is correct that, to be a naked depository, MPC must have held the pallets for the benefit of CHEP. MPC does not dispute this, but argues that there is no genuine issue of fact in this regard. We disagree.

---

[5] It is also part of the definition of a naked deposit that the property be held for another gratuitously. The gratuitous aspect of the definition is particularly important with respect to our discussion of the recovery which is appropriate under the statute for a naked depository. See Part I.E. below.

The statements of the owners of MPC, the Mocks, undermine the contention that no reasonable juror could believe that MPC acted for its own benefit rather than CHEP's. When asked why he did not contact CHEP, Ricky Mock stated in deposition that, "I bought the pallets in good faith and I'm taking them in as a normal course of business and it's my philosophy that if they was [sic] yours you would have control of them or your customer would have control of them." Likewise, Ricky Mock stated that the pallets "don't belong to Chep because they belong to the customer that gave them away." Nancy Mock explained why MPC had not contacted CHEP about pallet retrieval as follows:

> Q. Have you or anyone at Mock Pallet Company ever called Chep about their pallets to ask them to come pick up pallets?
>
> A. No. We don't feel – we feel we've come by them honestly they don't belong to Chep anymore.

Similarly, when asked why MPC had not released CHEP-marked pallets upon CHEP's request, Nancy Mock stated:

> [W]e don't feel they belong to Chep. Those pallets have been brought — Chep has put up a cost – charged the people that they got them from and the other people have come about them rightfully in the course of business and we come about them rightfully in the course of business. So we see it's a free and clear pallet.

MPC's decision to sell 1,200 of the blue pallets also undercuts MPC's

contention that it held the pallets without expectation of reward.[6] MPC's formal position during the course of litigation also supports CHEP's position. For example, in its amended answer, MPC stated that it "continued to lawfully purchase approximately 500-1000 CHEP-marked pallets per month" and "is acquiring good title in said pallets, and as such owns them."

Finally, we note that although MPC did not have any legal duty under the naked depository statutes to contact CHEP regarding the presence of blue pallets at MPC's yard, MPC's failure to do so, in some cases for roughly a decade after it came into possession of the pallet, and despite contact information being listed on the pallets and provided through general mailings, is in tension with MPC's claim that it was storing the pallets gratuitously on CHEP's behalf.

The record, however, does contain significant evidence pointing the other direction, i.e., pointing to the conclusion that MPC recognized CHEP's ownership and intended to store the pallets for CHEP's benefit. For example, in September 2001, Ricky Mock met with CHEP representatives and told them that he would

---

[6] The district court held that these sales would have been "inconsistent with MPC's status as a naked depository . . . and would constitute conversion of such pallets" but for the fact that CHEP's claim for conversion with regard to the 1,200 pallets was barred by the statute of limitations. We address the statute of limitations issue below. However, MPC's sale of the pallets is also some evidence that MPC was not holding them for the benefit of CHEP.

return CHEP's pallets if CHEP paid a $5 per pallet storage and handling fee.[7] On October 12, 2001, MPC's lawyer notified CHEP that it would begin charging a storage fee of $.05 per pallet per day. This is sufficient to create a genuine dispute of material fact regarding whether MPC stored the pallets gratuitously on CHEP's behalf or rather was asserting ownership thereof.

Thus, we conclude there are genuine issues of material fact with respect to whether MPC was a naked depository. The district court erred in concluding at the summary judgment stage that MPC was a naked depository. However, because the fact finder on remand may find that MPC is a naked depository, we set out in Part I.E the appropriate measure of damages or recovery.

C. <u>Unjust Enrichment</u>

The district court granted summary judgment in favor of MPC on its claim

---

[7] Ricky Mock recounted the conversation as follows:

I told [the CHEP representative] that if they were there [sic] pallets I would be glad to return them to them for a $5 storage and handling fee but I didn't feel that they was [sic] their pallets and I bought them in the normal course of business.

. . . Finally, I told him to shut up and listen to me. I said you got five days to bring a cashier's check and get your pallets off my property or I'm going to consider the pallets and [sic] abandoned. . . .

This is your deal. You either you [sic] come up and get them at $5 a pallet or they are going to be mine and I'll do what I want with them . . . I'm tired of hearing you.

against CHEP for unjust enrichment, but dismissed the claim because MPC would be completely compensated as a naked depository. We agree with the district court that if the fact finder on remand finds that MPC is a naked depository, then MPC will be completely compensated in whatever amount the fact finder finds pursuant to the law set out in Part I.E of this opinion. However, if the fact finder finds that MPC is not a naked depository, then we hold that the district court correctly ruled that MPC would be entitled to recover from CHEP for unjust enrichment, and thus correctly granted summary judgment in favor of MPC in this regard.

As stated in Hollifield v. Monte Vista Biblical Gardens, Inc., 251 Ga.App. 124, 131 (2001):

> The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received. Inherent in the theory of unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon him by another and failed to stop the act or to reject the benefit prior to its conferment.

Id. (citations omitted).

CHEP's behavior in the instant case meets the criteria set forth in Hollifield. Specifically, summary judgment for MPC on the unjust enrichment claim is appropriate because (a) MPC's handling and storage of CHEP's pallets is a benefit conferred upon CHEP; (b) there is no legal contract between CHEP and MPC; and

(c) CHEP's business model contemplates that MPC, a stranger to the contractual relationship between CHEP and its customers, will bear CHEP's costs of collecting, sorting and storing CHEP's pallets. Equitable considerations dictate that CHEP reimburse MPC for the benefit to CHEP of MPC's services.

Thus, if the fact finder on remand finds that MPC is not a naked depository, then MPC will be entitled to recover from CHEP under the theory of unjust enrichment. We set out the appropriate measure of recovery in Part I.D immediately below.

### D. Calculation of Damages Under the Unjust Enrichment Theory

"The measure of damages under ... unjust enrichment is based upon the benefit conferred upon the [recipient] and not the cost to render the service or cost of the goods." Id. at 130-31 (brackets in original). We leave determination of the benefit conferred upon CHEP to the district court in the first instance.

### E. Damages Under the Naked Deposit Statutes

The appropriate measure of damages or recovery for a naked depository is set out as follows. There are two statutory provisions relevant to determining the costs incurred by a naked depository. O.C.G.A. §44-12-96 states:

> One who holds a naked deposit is entitled to be reimbursed for all charges and expenses which he incurs by reason of the deposit, and he may retain possession of the deposit until such charges and

expenses are paid.

O.C.G.A. §44-14-410 states:

[I]nvoluntary, gratuitous, or naked depositories shall have a lien on the property in their possession for any expense incurred in caring for the property and any expenses incurred in the effort to locate the owner thereof. Where the owner and his address are known, the depository is authorized, but is not required, to address a notice by registered or certified mail to the owner notifying him that the depository holds the property and that the property will be delivered to the owner upon reasonable identification and payment of any charges that have accrued in caring for the property and in giving such notice.

The district court interpreted these statutes to provide for reimbursement in the amount equivalent to the cost of "reasonable hire," citing Savannah Steam Rice-Mill Co. v. Hull, 103 Ga. 831, 833-34, 30 S.E. 952, 953 (1898), Postell v. Val-Lite Corp., 78 Ga.App. 199, 203-04 (1948), and Morrow Transfer & Storage Co. v. Whitson, 20 Ga.App. 149 (1917). At trial, MPC offered evidence not only regarding out of pocket costs of handling the pallets such as transport and sorting, but also included pro rata shares of all of MPC's fixed expenses. Finally, MPC argued that it was entitled to a pallet storage fee of $.05 per pallet per day, an amount which clearly included a considerable element of profit. Indeed, it is probable that the verdict awarded by the jury consisted largely of storage fees. In other words, it is clear to us that the district court permitted MPC to recover not only its actual expenses attributable to the blue pallets but also profit and a pro rata

14

portion of general overhead expenses. We are persuaded that the district court erred in this regard.

We are persuaded that the district court's interpretation is inconsistent with the plain meaning of §44-12-96. In particular, we reject Mock's argument that the word "charges" encompasses not only amounts charged to Mock by other parties, but also amounts that Mock wishes to charge the depositor. The statute states that the depositee is "entitled to be <u>reimbursed</u> for all charges and expenses which he <u>incurs</u> by reason of the deposit." §44-12-96 (emphasis added). We are persuaded that the word "reimburse" means that Mock would have to have paid out money or expended labor with respect to which it would be entitled to be reimbursed. The word "incurs" reinforces our belief that the word "charge" refers to any fees a third party might charge to MPC for services related to storage or handling of CHEP's pallets. Finally, we are persuaded that the term "by reason of" indicates that such charges and expenses must not only be actually incurred, but that these expenses must also be directly attributable to and proximately caused by the storage or handling activity gratuitously undertaken by the depositee on behalf of the depositor.[8]

---

[8] The district court's reliance on <u>Postell v. Val-Lite Corp.</u>, 78 Ga.App. 199 (1948), <u>Morrow Transfer & Storage Co. v. Whitson</u>, 20 Ga.App. 149 (1917), and <u>Savannah Steam Rice-Mill Co. v. Hull</u>, 103 Ga. 831, 833-34, 30 S.E. 952, 953 (1898), is misplaced. The latter two

The definition of naked deposit as an undertaking to keep property for another <u>gratuitously</u> also provides strong support for our interpretation. The plain meaning of the word "gratuitous"[9] makes clear that a depository who stores property gratuitously stores it without expectation of profit. The statutory definition of a naked deposit as holding property for another <u>gratuitously</u> stands in stark contrast to the definition of a depository for hire – i.e., one who keeps property for another with an expectation of reward or hire. Profit is an appropriate recovery for a depository for hire, but not for a naked depository.

As applied to the facts of this case, we hold that MPC can be reimbursed only for amounts which it can prove were actually expended by it because of the presence of the pallets and which would not have been expended except for the presence of those pallets. Thus, MPC cannot recover profit; nor can it recover general administrative and overhead expenses unless it can prove particular items

---

cases involve warehousemen, rather than naked depositories. <u>Postell</u> is a naked depository case, but gives no indication that costs beyond those actually incurred are recoverable. To the contrary, it appears that the depositee in <u>Postell</u> merely sought reimbursement for charges he had been forced to pay to others as a direct result of the depositor's refusal to retrieve the goods stored as a personal favor.

[9]   <u>Merriam-Webster's New Collegiate Dictionary</u> defines "gratuitous" as "**1. a** : given unearned or without recompense **b** : not involving a return benefit, compensation or consideration **c** : costing nothing : FREE." (10th ed.1999) (emphasis in original).

thereof would not have been incurred except for CHEP's pallets.[10] To the extent these costs are for storage, we are also persuaded that recovery is limited to actual out-of-pocket expenditures directly attributable to the presence of CHEP's pallets which would not have been incurred except for the presence of those pallets."[11] Accordingly, the jury verdict determining MPC's damages as a naked depository is set aside. If MPC is found on remand to have been a naked depository, then the finder of fact must determine MPC's appropriate recovery pursuant to instructions consistent with this opinion.

### F. CHEP's Specific Conversion Claim with Respect to the 1,200 Pallets Sold

The district court ruled on summary judgment that MPC's sale of the 1,200 blue pallets was "inconsistent with MPC's status as a naked depository . . . and would constitute conversion of such pallets." We agree. We also conclude that, even if MPC is not a naked depository, and is merely entitled to unjust

---

[10] In other words, MPC is not entitled to reimbursement for a pro-rata share of costs, fixed or otherwise, which would have been incurred even if MPC had not taken possession of any blue pallets. Thus, unless MPC can demonstrate that some portion of its rent, utilities, overhead, etc., or some portion of any given improvement, was directly attributable to the storage and handling of the blue pallets and would not have been incurred by MPC except for those pallets, it is not entitled to reimbursement on a pro-rata basis for these expenses.

[11] It is clear to us that the $.05 per day per pallet which MPC sought for storage is not a reasonable reflection of MPC's actual out-of-pocket expenses incurred, and we so hold as a matter of law.

enrichment recovery, there nevertheless was a conversion with respect to the pallets which were sold. However, the district court ruled that CHEP's claim for conversion of these pallets was barred by the statute of limitations because CHEP did not provide evidence that "the pallets sold were acquired within the four-year period preceding the inception of this action." Having rejected CHEP's conversion claim, the district court, of course, also ruled that CHEP was not entitled to punitive damages due to MPC's sale of the 1,200 pallets.

O.C.G.A. §9-3-32 (2002) states that "[a]ctions for the recovery of personal property, or for damages for the conversion or destruction of the same, shall be brought within four years after the right of action accrues." "The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained her action to a successful result." Travis Pruitt & Assocs. P.C. v. Bowling, 238 Ga.App. 225, 226 (1999).

As we have already discussed, MPC did not convert CHEP's pallets when it came into possession of them. Rather, we think conversion did not occur until MPC sold the pallets. The four years had not passed between the accrual of CHEP's right and CHEP's addition of the claim in its amended complaint. For these reasons, we reverse the district court's grant of summary judgment on the statute of limitations issue with respect to the 1,200 pallets which were sold and

converted.[12]

This is not, however, the end of the matter. Although CHEP is entitled to summary judgment on its conversion claim regarding these 1,200 pallets, the amount of CHEP's damages must be offset by whatever MPC is owed attributable to its possession of those pallets prior to sale, either as a naked depository or under the unjust enrichment theory, as the case may be.

## II. CONCLUSION

For the foregoing reasons we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**[13]

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

[12] However, we are confident that no reasonable jury could impose punitive damages and we therefore affirm the district court's ruling that CHEP is not entitled to punitive damages. We also affirm the district court's denial of CHEP's claim for injunctive relief.

[13] In light of the decisions reached today, we believe that this case can be and should be settled. The court refers this appeal to the Kinnard Mediation Center for settlement discussions under FED. R. APP. P. 33 and 11TH CIR. R. 33-1. Counsel are directed to telephone the Kinnard Mediation Center within 14 days of this opinion to schedule a time and place to explore settlement. Before settlement discussions, counsel are directed to consult their clients and obtain as much authority as feasible to settle this case.

We also direct that the mandate in this case not issue for 90 days, subject to either extension or shortening, depending upon developments with respect to the mediation.